UNITED STATES, Appellee,

v.

Wesley J. MORRIS, Specialist Five U. S. Army, Appellant.

No. 39,688.

CM 439001.

U. S. Court of Military Appeals.

Jan. 18, 1982.

For Appellant: *Lieutenant Colonel John F. Lymburner, Major Charles A. Byler, Captain James F. Nagle (on brief).*

For Appellee: *Colonel R. R. Boller, Major Ted B. Borek, Captain Paul G. Thomson, Captain Glenn D. Gillett* (on brief); *Captain Michael E. Pfau.*

---

## Opinion

EVERETT, Chief Judge:

A military judge sitting as a general court-martial in Bremerhaven, Federal Republic of Germany, convicted appellant of possessing 32 ounces more or less of marihuana, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. The sentence adjudged was a bad-conduct discharge, confinement at hard labor for 3 years, total forfeitures, and reduction to the grade of E–1. The convening authority approved the findings and the sentence except for confinement in excess of 2 years. The United States Army Court of Military Review affirmed the approved findings and sentence, and we granted review of this issue (10 M.J. 110):

THE SEARCH OF THE ACCUSED'S OFF–BASE APARTMENT LOCATED IN THE FEDERAL REPUBLIC OF GERMANY WAS ILLEGAL IN THAT THE GOVERNMENT FAILED TO SHOW THAT THE SEARCH WAS CONDUCTED PURSUANT TO LAW AND REGULATION.

### I

At trial appellant moved to suppress evidence which had been obtained by a search of his off-post apartment in which he had resided for approximately ten months and which he shared with Specialist Four Kevin B. Massey. The search had been authorized by Colonel Ronald Crowley, Commander, U. S. Army Support Group, Norddeutschland, on the basis of an affidavit setting forth certain information received by the Army Criminal Investigation Division (CID). In the search of the apartment by German police and American CID agents, a German police officer discovered marihuana in a large plastic bag behind a sliding door in a closet. Also, marihuana seeds and residue and drug paraphernalia were located elsewhere in the apartment.

■ Appellant raises the same issue as that dealt with in *United States v. Whiting*, 12 M.J. 253 (C.M.A.1982), which reached us upon a certificate from the Judge Advocate General of the Air Force. There we explained our conclusion that the Agreement Between the Parties to the North Atlantic Treaty Regarding the Status of Their Forces (NATO SOFA), 4 U.S.T. 1792, T.I.A.S. No. 2846 (effective date— August 23, 1953), was not intended to confer upon servicemembers or others a personal right to object to the admission of evidence in a trial on the grounds that it had been obtained by a search and seizure which violated American treaty obligations. Indeed, the provisions in Article VII of NATO SOFA concerning investigations and seizures, 4 U.S.T. 1800, were directed at governing the relationships among the contracting parties and were not intended to be enforced by the courts. While the presence of the German police during the search of appellant's off-base apartment indicates that the German authorities perceived nothing irregular about the search, under our view we need not determine whether the search conformed to some authorized arrangement between the Germans and the American military authorities.

■ Appellate defense counsel invited our attention to a provision of Army Regulation 190–22 (June 12, 1970), which states, "When the person or property [to be searched] is located in a foreign country, the commander will authorize a search only when such action is authorized by an international agreement or arrangement with the authorities of the foreign country." Para. 2–1a. However, we do not interpret this language as being intended to create any right in an accused to object to evi-

dence because it was obtained in a search which was not "authorized by an international agreement or arrangement." *See United States v. Caceres*, 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979); *United States v. Whiting, supra.*

■ Paragraph 2–1(3), USAREUR Supplement 1 to AR 190–22 (July 11, 1978), states that a commander may authorize

[a] search of any property owned, controlled, used, occupied by, or in the possession of a military member subject to his/her jurisdiction, including economy quarters [1], when such property is located outside premises controlled by US Forces as a result of an international agreement.

Once again we conclude that the directive which has been called to our attention does not grant a servicemember the right to invoke the exclusionary rule because the search of his off-post quarters was not specifically "authorized by" or the result of "an international agreement"; accordingly, the directive does not require the prosecution to establish in a court-martial that there has been compliance with such an agreement.[2]

■ In short, as long as it appears that a search conducted in a foreign country complied with the provisions of paragraph 152 of the Manual for Courts-Martial, United States, 1969 (Revised edition), as well as any military regulation clearly intended to confer on an accused a personal right to object to a search or seizure as unreasonable and to invoke the exclusionary rule, the basic requirements for admissibility have been met.[3]

II

The decision of the United States Army Court of Military Review is affirmed.

COOK, Judge (concurring with reservation):

Certain provisions of the Military Rules of Evidence relating to search and seizure authorize the Secretary of Defense or the Secretary of a service to "prescribe ... requirements" in addition to those provided by the rules. *See* Mil.R.Evid. 315(f) and 317(c)(2). Beyond that, I am not at all sure that the rules prescribed by the President for admissibility of evidence obtained in a search can be altered by department or service regulation. *See* Mil.R.Evid. 101(b) and 1102. Consequently, I express no opinion on the correctness of the last paragraph of Part I and note 3 of the majority opinion. Otherwise, I concur.

FLETCHER, Judge (concurring in the result):

I again must depart from the majority insofar as it continues to rely on *United States v. Whiting*, 12 M.J. 253 (C.M.A. 1982). However, as in *United States v. Bunkley*, 12 M.J. 240 (C.M.A.1982) (Fletcher, J., concurring in the result), I conclude there is sufficient evidence in the record of trial to support the conclusion that the Agreement Between the Parties to the North Atlantic Treaty Regarding the Status of Their Forces (NATO SOFA), 4 U.S.T. 1972, T.I.A.S. No. 2846 (effective date—August 23, 1953); the Agreement to supplement the Agreement Between the Parties to the North Atlantic Treaty Regarding the Status of Their Forces with respect to Foreign Forces stationed in the Federal Republic of Germany (Supplementary Agreement), 14 U.S.T. 531, T.I.A.S. No. 5351 (effective date—July 1, 1963), and applicable Army regulations were complied with in the present case.

---

1. "Economy quarters" is defined in this same directive to include rented housing like that which appellant occupied. Para. 1–2*g*.

2. In the case at bar, the objection made at trial did not specify as a ground noncompliance with international agreements. Therefore, the Government did not seek to establish that the search complied with Treaty obligations; the Court of Military Review did not discuss the issue. It is at least arguable that the lack of greater specificity in the objection should preclude appellant from raising the issue.

3. Also, if an international agreement to which the United States is a party were intended to allow a personal right to invoke the exclusionary rule because of noncompliance with Treaty obligations, a violation of those obligations would render the evidence inadmissible. *Cf. United States v. Whiting*, 12 M.J. 253 (C.M.A.1982); *United States v. Stokes*, 12 M.J. 229 (C.M.A.1982).