**UNITED STATES, Appellee,**

v.

**Specialist Four Ellis J. PITTS, SSN 579–70–2140, United States Army, Appellant.**

**SPCM 15669.**

U. S. Army Court of Military Review.

26 Feb. 1982.

Wendell P. Gardner, Jr., Esquire, argued the cause for the appellant. With him on the brief were Colonel Edward S. Adamkewicz, Jr., JAGC, Major Charles A. Byler, JAGC, Captain Steven T. Cain, JAGC, and Captain Richard W. Vitaris, JAGC.

Captain Eugene R. Milhizer, JAGC, argued the cause for the appellee. With him on the brief were Colonel R. R. Boller, JAGC, Major John T. Edwards, JAGC, and Captain Rexford T. Bragaw, JAGC.

Before FULTON, CLAUSE and COHEN, Appellate Military Judges.

## OPINION OF THE COURT

PER CURIAM:

Appellant was tried by a special court-martial composed of officer members at Kaiserslautern, Federal Republic of Germany, on 13 November 1980. Contrary to his plea, he was convicted of possession of marihuana in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934 (1976). His adjudged sentence to a bad-conduct discharge, confinement at hard labor for six months, forfeiture of $334.00 pay per month for six months, and reduction to Private E–1 was approved by the convening authority.

On 19 September 1980, PFC Carrell was on duty as a Military Police Customs Inspector at the Frankfurt International Airport. PFC Carrell observed appellant waiting near the end of his inspection line (rather than proceeding through it) even though appellant had apparently gathered all of his baggage. Carrell considered this to be suspicious activity. When appellant came through the line, Carrell ordered him to stop. As appellant apparently ignored this order, Carrell repeated it. When appellant did stop, Carrell recited his standard advisement to all passengers coming through his line, to wit "I'm PFC Carrell, MP Customs, you have just crossed an international border and therefore subject to a customs inspection... Do you wish to be inspected by MP Customs or German Customs?" Appellant elected MP customs. When Carrell inspected appellant's suitcase, he discovered a cocaine identification kit. Carrell then asked appellant to place his dufflebag on the bench. Appellant hesitated and complained that "he didn't understand why MPs searched [other] MPs" (appellant was an MP). Carrell discovered marihuana in the dufflebag and a search of appellant's

person after apprehension revealed marihuana in a cigarette package.

Carrell testified that he regularly assisted the German customs personnel at the airport. German personnel were in charge and MP inspectors would only participate if German customs officials were present at the bench where the inspection was performed. Carrell would follow the orders of German officials to inspect or not inspect. Carrell had some discretion in who he actually made open their baggage among those coming through his line (made up of servicemembers). In addition to a visual inspection he actually searched about ten percent of those who elected to be inspected by MP customs (although he searched more persons, some 90 to 95 percent, who, like appellant, acted suspiciously by lagging around the end of the line apparently on purpose). Every person coming through his line received the same oral recitation quoted above. If a person elected German inspection, Carrell would send him to the German customs line.

German Customs Officer Kretchmer testified that the MP inspectors' particular duty was to assist the German authorities when a U.S. servicemember is involved; the German officials are in charge; the MP's do not work there when German officials are not present; and his German supervisors could give instructions to the MPs.

The motion to suppress at trial was denied by the military judge who found that the MP customs personnel were properly present at the airport, their inspections were approved by the German officials and their inspections were only done in connection with the Germans and while the Germans were present. The military judge also found that the appellant had voluntarily consented to the inspection.

The appellant asserts on appeal that he was substantially prejudiced by the failure of the military judge to suppress the marihuana seized by MP customs. We disagree and affirm.

■ Pursuant to the longstanding right of the sovereign to protect itself by stopping and examining persons and property crossing into its country, border searches are reasonable under the Fourth Amendment without any additional requirement of probable cause, articulable suspicion or a warrant. *United States v. Ramsey*, 431 U.S. 606, 616, 619, 97 S.Ct. 1972, 1978, 1980, 52 L.Ed.2d 617 (1977); *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); *United States v. Rivera*, 4 M.J. 215 (C.M.A.1978). In this respect, the Federal Republic of Germany has a right to protect its national interests at its borders and in so doing may detain and search persons attempting to enter its borders. *See United States v. Paige*, 7 M.J. 480 (C.M.A.1979). In furtherance of this sovereign right, the Federal Republic of Germany entered into the Supplemental Agreement[1] to the North Atlantic Treaty Organization Status of Forces Agreement (NATO SOFA),[2] as supplemented, under which, inter alia, the United States agreed that the German authorities have the right to conduct border searches of United States servicemembers entering that country. Article III, section 6 of the Supplemental Agreement to NATO SOFA provides for the stationing of liaison officials from the United States at frontier crossing points to "... assist the German authorities in their control functions in order to ensure the speedy and unobstructed passage of the force..." *See also* Part VII of the Implementation Agreement.[3] We find that the MP customs operation in the instant case was precisely the type of "assistance" envisioned in the

1. 14 U.S.T. 531, T.I.A.S. No. 5351 (effective date—July 1, 1963).

2. 4 U.S.T. 1792, T.I.A.S. No. 2846 (effective date—August 23, 1953).

3. Agreement on the Implementation of the Customs and Consumer Tax Provisions of the Supplementary Agreement to the NATO SOFA in Favor of Members of a Force, of a Civilian Component and Dependents (Article 66 and paragraph 6 of Article 3 of the Supplementary Agreement), Annex 2 to the Note Verbale of the Federal Ministry for Foreign Affairs of August 3, 1959.

NATO SOFA, as supplemented.[4] Additionally, we conclude that none of the provisions of the NATO SOFA, as supplemented, were violated by MP customs.[5] The search in question was thus a valid border search by the German authorities with liaison assistance from the MP customs pursuant to NATO SOFA.[6] Accordingly, the military judge correctly denied the motion.

The findings of guilty and the sentence are affirmed.

4. Appellant's assertions that the actions of the MP customs in the instant case were not "assistance" but were an exercise of their own unfettered and uncontrolled discretion, is not supported by the record. Thus this case is factually distinguishable from *United States v. Paige, supra,* wherein the military police were operating completely independent of the German authorities.

5. We therefore need not determine whether the particular provisions allegedly violated were of such a nature as to confer upon appellant any personal right which he can use as a basis to invoke an exclusionary rule in respect to evidence obtained in violation thereof. *See United States v. Mitchell,* 12 M.J. 265 (C.M.A.1982); *United States v. Morris,* 12 M.J. 262 (C.M.A. 1982); *United States v. Whiting,* 12 M.J. 253 (C.M.A.1982); *United States v. Bunkley,* 12 M.J. 240 (C.M.A.1982).

6. An additional basis proffered by the Government to justify this search was that under the totality of the circumstances, it was the product of appellant's voluntary consent. *See Schneckloth v. Bustamonte,* 412 U.S. 218 (1973); *United States v. Castro,* 23 U.S.C.M.A. 166, 48 C.M.R. 782 (1974). The military judge specifically found the existence of such voluntary consent beyond a reasonable doubt, even though it only had to meet the lesser standard of clear and convincing evidence. *United States v. Watkins,* 22 U.S.C.M.A. 270, 46 C.M.R. 270 (1973). We also would have no difficulty in finding the existence of voluntary consent.