UNITED STATES, Petitioner,

v.

Miguel A. PEREIRA, Major, USAF, Military Judge, Respondent.

Miscellaneous Docket No. 82–4.

U. S. Air Force Court of Military Review.

30 April 1982.

Counsel for Petitioner: Colonel James P. Porter and Major Michael J. Hoover.

Counsel for Respondent: Major Willard K. Lockwood.

Before HODGSON, C. J., MILES and POWELL, Senior Judges, and MAHONEY, KASTL, RAICHLE and MILLER, JJ.

## OPINION and ORDER

MAHONEY, Judge:

In an ongoing special court-martial, the Government petitions us to reverse an exclusionary ruling by the respondent trial judge. We conclude that the trial judge erred in suppressing the fruits of a border search, but we decline to intervene because the relief sought is outside the scope of this Court's supervisory writ authority.

## BACKGROUND

On 25 April 1981 the accused, Airman Mark D. Dresow, was returning from leave in the United States to his duty station at Rhein-Main Air Base, located in the Federal Republic of Germany. He arrived by commercial airliner at the Frankfurt airport. After passing through German immigrations, he was required to clear German customs. He was afforded the alternative of being inspected by German customs agents, or by United States Army military police customs inspectors working under the direction of the German customs authorities. The accused elected to be inspected by an American military police customs inspector.

The military policeman asked the accused to take off his jacket, and to empty his pockets. Two bags of marihuana were found in the jacket. Based upon this discovery, the military policeman asked the German customs supervisor for permission to conduct a strip search. Approval was granted, and the strip search was carried out in a private room designated for that purpose. That search resulted in the discovery of another bag of marihuana in the accused's sock. No other items were seized from the accused's person or baggage.

The fruits of that customs inspection were charged as wrongful possession of marihuana in one of nine specifications pre-

ferred on 27 October 1981. The remaining specifications, both antedating and postdating the customs inspection, allege two wrongful possessions, two wrongful uses, and four wrongful transfers of marihuana. The charges were served on the accused on 4 November 1981, and were brought on for trial on 27 January 1982. Hearings were held on that date and the next two days. They culminated in the ruling of the trial judge, here challenged.

The judge made extensive findings of fact and entered his conclusion of law that the fruits of the customs inspection were inadmissible. Since the trial counsel indicated he had no other evidence available to prove that specification, the judge dismissed it. The convening authority did not request reconsideration of the ruling, Article 62(a), Uniform Code of Military Justice, 10 U.S.C. § 862(a), but the judge reconsidered it at the request of the trial counsel. There being no new evidence, the military judge adhered to his earlier ruling. Thereupon the trial counsel requested, and the military judge granted, over defense objection, an indefinite continuance to file a petition for extraordinary relief.[1]

That petition was filed with this Court on 9 March 1982 by appellate government counsel. Attached to the petition is an authenticated record of the trial proceedings. On 17 March 1982 we decided to consider the petition *En Banc*, ordered the respondent military judge to show cause why the requested relief should not be granted, and requested The Judge Advocate General to appoint appellate defense counsel to represent the trial judge. Counsel was appointed on 18 March 1982, and filed his answer on 29 March 1982.

## BORDER SEARCH

The trial judge expressed his disagreement with *United States v. Paige*, 7 M.J.

---

1. The trial judge's grant of the continuance was discretionary. Article 40, Uniform Code of Military Justice, 10 U.S.C. § 840; paragraph 58*b*, Manual for Courts-Martial, 1969 (Rev.). We recognize that the issue presented may be of continuing concern to the command. Yet, we are somewhat troubled by the choice of this case, already stale, and with eight other serious offenses charged, as a vehicle to test the validity of German customs inspections carried out by American customs inspectors. Fortunately, there is no indication that the accused has been in pretrial confinement or has otherwise been prejudiced by the delay occasioned by the Government petition.

480 (C.M.A.1979), but ruled that it was controlling, and that it required exclusion of the marihuana seized by the military policeman.

We believe that result was not compelled by *Paige* for two distinct reasons. First, since reconsideration in *Paige* was denied by an equally divided Court, it is not precedent binding upon us or the trial judge. *United States v. Paige, reconsideration denied*, 9 M.J. 254 (C.M.A.1980), Memorandum of Chief Judge Everett at 254–55; *United States v. Fimmano, reconsideration denied*, 9 M.J. 256 (C.M.A.1980), Memorandum of Chief Judge Everett at 260–61.

Second, although *Paige* may be considered for its persuasive effect, we view it as inapposite. The primary concern of the majority opinion in that case was that the search by American military police occurred *after* the border inspection was completed by German authorities, and *without* a warrant or valid exception to the warrant requirement of the Fourth Amendment. Based upon those factual conclusions, the result reached in *Paige* is reasonable, but has no bearing upon the facts *sub judice.* Here, the evidence was seized *during* the customs inspection of the accused incident to his entering the Federal Republic of Germany.[2]

■ The narrow issue before the trial judge, not decided in *Paige* or our decision in *United States v. McCullough*, 11 M.J. 599 (A.F.C.M.R.1981)[3] is whether the participation of American military personnel in a German customs inspection at the German border upon entry into the Federal Republic of Germany renders any evidence obtained inadmissible in a United States court-martial.

Despite the extensive role of the military policeman in the German customs inspection, *United States v. Morrison*, 12 M.J. 272, 279 (C.M.A.1982), it was performed in a manner consistent with treaty arrangements between the two countries. Specifically, the North Atlantic Treaty Organization Status of Forces Agreement (NATO SOFA)[4] and the executive Supplementary Agreement[5] require the United States military forces to provide customs assistance to facilitate the inspection of American troops in the Federal Republic of Germany. An MP-Customs Memorandum, dated 3 May 1975, between the American military police and the German customs authority sets forth the working details of the American assistance in German customs inspections of American service personnel.

On the facts as we view them, the military policeman was performing a customs inspection on behalf of the German Government in its legitimate effort to control the entry of contraband and duty regulated items into German territory. As a part of his findings of fact, the military judge found that "[w]hile violations of German customs laws were part of the purpose [of the military policeman's inspection], the primary purpose of the search was to look for narcotics or other drug contraband." We agree that the military policeman's primary interest may have been to detect drugs. Nonetheless, the record discloses a complete

2. The Government has advanced two theories which were rejected by the military judge. We agree with his implicit determination that the facts of this case can not properly be analyzed as an *exit search at the United States border.* Despite the legal proximity of the German and United States borders, clearly the accused had already entered Germany. It strains credibility to suggest that he, or any other person on that Lufthansa flight was subject to a United States customs inspection upon landing at a civilian airport facility in the Federal Republic of Germany. Likewise, we agree that the facts here cannot be properly analyzed as a search incident to *entry to a United States military installation.* Even though Frankfurt airport shares runways and other facilities with Rhein-Main Air Base, the airport disembarkation area is not an entryway to Rhein-Main Air Base or any other United States military installation.

3. Our decision in *McCullough* (sanctioning the admission of the fruits of a German border inspection executed by an American military policeman) was predicated upon the accused's lack of standing to contest the validity of the search.

4. 4 U.S.T. 1792, T.I.A.S. No. 2846 (23 August 1953).

5. 14 U.S.T. 531, T.I.A.S. No. 5351 (1 July 1963).

customs inspection, not impugned by the motivation of the individual inspector. The record also discloses that when items subject to German duty are discovered by military police customs inspectors, they are turned over to German customs officials for collection of duties. American military authorities are allowed to dispose of cases involving illicit drugs seized by service members only if German authorities elect not to intervene. Even then, case-by-case and quarterly reports are provided by military police to the German authorities.

Clearly, the Federal Republic of Germany has the sovereign right to protect its borders. *See, United States v. Paige, supra,* at 486–89 (Cook, J., dissenting). Had this border search been conducted by a German customs agent, the marihuana—if made available to United States officials—would clearly be admissible at a court-martial. Mil.R.Evid. 311(c)(3) specifically sanctions the admission in evidence of the results of searches by officials of foreign governments, *or their agents,* which do not subject the accused to gross or brutal treatment. Here, the agent of the foreign government was an American military policeman.

The search in this case did not subject the accused to gross or brutal treatment. In fact, it was performed in a manner not offensive to United States Constitutional standards as they relate to border searches upon entry to the United States. *E.g., United States v. Himmelwright,* 551 F.2d 991 (5th Cir. 1977), *cert. denied,* 434 U.S. 902, 98 S.Ct. 298, 54 L.Ed.2d 189 (1977).

Were this case before us in the normal course of appellate review, the military judge having *admitted* the challenged evidence, we would hold he did not err. Recently reviewing the same type of customs inspection at the Frankfurt Airport, executed by an American military policeman, a sister Court of Military Review so held. *United States v. Pitts,* 12 M.J. 1024 (A.C.M.R.1982).[6]

## SUPERVISORY WRIT AUTHORITY

■ Doubtless, we have the authority to issue a Writ of Mandamus to a trial judge on application of either the defense or the prosecution. All Writs Act, 28 U.S.C. § 1651(a); *United States v. Dettinger,* 6 M.J. 505 (A.F.C.M.R.1978). However, as the Court of Military Appeals pointed out in modifying that opinion, *Dettinger v. United States,* 7 M.J. 216 (C.M.A.1979), we may not intervene to disrupt the trial judge's exercise of permissible discretion when his ruling is not contrary to statute, decisional law, or valid regulation. *See, United States v. Breen,* 11 M.J. 559 (N.C.M.R.1981) (search ruling); *United States v. Caprio,* 10 M.J. 586 (N.C.M.R.1981) (in personam jurisdiction).[7]

■ We have concluded that the trial judge erred in granting the defense motion to suppress the evidence seized in the border search. However, we also conclude that the ruling was not *contrary* to any decision binding upon him (i.e.: a decision of this Court, the Court of Military Appeals, or the United States Supreme Court), nor was it

---

6. The issue of *consent* was raised in this case and in *Pitts.* The accused chose to be inspected by an American military policeman rather than a German customs agent. We do not view that choice as a voluntary consent to be searched. An election to be searched by either A or B is not a voluntary consent to be searched by either. Mil.R.Evid. 314(e)(4). On the other hand, by presenting himself at an international boundary the accused implicitly consented to search as a condition of entry. Having so consented, it is questionable whether he should be later heard to complain that the search was performed by the official he chose.

7. We are aware of a recent opinion by a sister court of military review overturning a trial judge's ruling as being unsupported in fact or law. *United States v. Wholley,* —— M.J. —— (N.M.C.M.R.1982) (speedy trial dismissal). We find its rationale inapplicable in the case *sub judice,* but similar to our rationale in *United States v. Dettinger,* 6 M.J. 505 (A.F.C.M.R. 1978), which was subsequently rejected by the Court of Military Appeals in *Dettinger v. United States,* 7 M.J. 216 (C.M.A.1979). In the exercise of our extraordinary writ powers we are not at liberty to substitute our legal judgment for that of the trial judge, although we may do so in the normal course of appellate review. *E.g., United States v. Southers,* 12 M.J. 924 (N.M.C.M.R.1982) (erroneous credit for pretrial confinement).

*contrary* to statute or regulation.[8] Nor is this a case where the remedy for the perceived infringement of the accused's rights exceeded the trial court's authority.[9]

The test to be applied by us in determining whether to intervene and overturn a trial judge's ruling is *not* whether the ruling was legally correct, but whether the judge exceeded his authority and ruled *contrary* to statute, applicable decisional law, or valid regulation.[10]

The respondent military judge's ruling in this case did not exceed the scope of his authority. He remains free to further reconsider his ruling in light of our opinion, but we will not usurp his authority. Accordingly, it is ORDERED that the petition for extraordinary relief be, and the same hereby is,

DENIED.[11]

HODGSON, Chief Judge, MILES and POWELL, Senior Judges, and KASTL, RAICHLE and MILLER, Judges, concur.

---

8. The NATO SOFA, as a treaty of the United States, may be accorded weight of statute, but it does not provide in detail for U. S. Forces assistance in performing German customs inspections. For the same reason, even though the treaty might qualify as an Act of Congress, *c.f., Edwards v. Carter*, 580 F.2d 1055 (D.C.Cir. 1978), the search in this case does not qualify as a border search within the meaning of Mil.R. Evid. 314(b). On the other hand, this search and seizure are not precluded by the Military Rules of Evidence. *See*, Mil.R.Evid. 314(k) and 316(e).

9. *See, United States v. Redding*, 11 M.J. 100 (C.M.A.1981) (dismissal of charges for improper denial of requested individual defense counsel). Clearly, in this case, if the marihuana was illegally seized, an appropriate remedy was to exclude it from evidence. Since no other evidence in support of the specification was available, dismissal of the specification was appropriate. Mil.R.Evid. 311(h); *United States v. Phare*, 21 U.S.C.M.A. 244, 45 C.M.R. 18 (1972).

10. We recognize full well that the Government, unlike the accused, does not have the benefit of a normal appeal from an adverse ruling by the trial judge. That fact, however, does not allow us to lower the standard to be applied in granting extraordinary writs. In this regard, the words of former Chief Judge Fletcher (concurring) in *United States v. Rowel*, 1 M.J. 289, 291 (C.M.A.1976) are well worth repeating:

> Our rejection of a portion of paragraph 67*f*, Manual for Courts-Martial, United States, 1969 (Rev.), in *United States v. Ware*, 1 M.J. 282 (1976), which was dictated by the plain language of Article 62(a), Uniform Code of Military Justice, in practical effect, leaves the Government with no means of appeal from an adverse ruling of the trial judge. Such a void is unhealthy from a judicial administration standpoint. *See* ABA Standards, Criminal Appeals § 1.4 (1970). Because appeals by the Government in criminal cases are barred absent statutory authorization, the immediate need for Congressional action which does not offend the Double Jeopardy Clause of the Constitution should be obvious. *See* 18 U.S.C. § 3731. [footnotes omitted].

11. The record of the proceedings is returned to The Judge Advocate General for remand to the trial judge for resumption of the trial.