UNITED STATES, Petitioner,

v.

Max S. BOWLDEN, Colonel, USAF
Military Judge, Respondent.

Miscellaneous Docket No. 83–1.

U.S. Air Force Court of Military Review.

25 March 1983.

## OPINION and ORDER

HEMINGWAY, Senior Judge:

The petitioner seeks a writ of mandamus to compel the respondent to reinstate an attempted rape specification which the respondent dismissed for lack of sufficient service connection to establish subject-matter jurisdiction.

At trial, the parties stipulated to the facts which formed the basis for the jurisdictional ruling and the respondent entered findings of fact after consideration of that stipulation and oral argument.*

If this case were before us on *appeal* following a finding of guilt at trial, we may well have found a basis for the exercise of jurisdiction. However, it is not before us on *appeal* and it is necessary to bear in mind the limited circumstances under which extraordinary relief in the nature of mandamus will be granted. In the exercise of our extraordinary writ powers, we are not at liberty to substitute our judgment for that of the trial judge although we may do so in the normal course of appellate review. *United States v. Pereira,* 13 M.J. 632 (A.F.C.M.R.1982). The test to be applied by us in determining whether to intervene and overturn a trial judge's ruling is whether the judge exceeded his authority and ruled contrary to statute, *settled* decisional law, or valid regulation. *Dettinger v. United States,* 7 M.J. 216 (C.M.A.1979); *United States v. Labella,* 14 M.J. 688 (N.M. C.M.R.1982); *United States v. Pereira, supra.* "If a rational and substantial legal argument can be made in support of the

*The stipulation of fact and the respondent's findings of fact are set out in the Appendix.

questioned jurisdictional ruling, the case is not appropriate for mandamus...." *Stein v. Collinson,* 499 F.2d 91, 94 (8th Cir.1974).

■ There still exists considerable interpretive leeway in the area of court-martial jurisdiction. As a result, any error in this case was well within the discretionary authority of the military judge.

The petitioner has asked that, in the alternative, we order the respondent to hear additional prosecution evidence on the issue of jurisdiction. The respondent refused to do so when he reconsidered his original jurisdictional ruling at the request of the convening authority. Again, we find no basis for extraordinary relief. Paragraph 67f M.C.M., 1969 (Rev.)

Accordingly, it is ORDERED that the petition for extraordinary relief be and the same is hereby

DENIED.

MILLER, Judge, concurs.

HODGSON, Chief Judge, absent.

APPENDIX A

| UNITED STATES | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| AIRMAN FIRST CLASS | ) | STIPULATION OF FACT |
| VERNON D. FIELDS | ) | |
| 3421st School Squadron | ) | |
| United States Air Force | ) | |
| Lowry Air Force Base, Colorado | ) | |

It is hereby stipulated and agreed by and between the prosecution and the defense, with the express consent of the accused, that the following is true:

Airman Basic Katherine E. Patterson came on active duty in the United States Air Force in May 1982 and has continued on active duty until the present. She arrived at Lowry Air Force Base, Colorado, on 7 July 1982, and was assigned to the 3421 School Squadron, her present organization. Shortly after her arrival she was disenrolled as a student and processing began for her administrative separation from the Air Force. While awaiting separation she was assigned duties as a dorm guard in her barracks, Building 413 on Lowry AFB. Her duty hours were 0600–1800 every other day. Shortly after arriving at Lowry AFB, AB Patterson met A1C Vernon D. Fields. He came up to her and introduced himself while both were eating in the base dining hall. A1C Fields came on active duty in the Air Force on 16 February 1982 and has continued on active duty from that time until the present. During the following weeks, AB Patterson and A1C Fields occasionally went off-base socially. On two occasions A1C Fields and AB Patterson accompanied other military members to City Park in Denver, Colorado, where they talked and drank beer. On two occasions, Amn Jeffrey S. Hollis was in the group that went to City Park. AB Patterson met Airman Hollis through these other military members who were also stationed at Lowry AFB. Amn Hollis came on active duty in the Air Force on 8 April 1982 and has continued on active duty from that time until the present. AB Patterson had no other contact with A1C Fields and Airman Hollis since they were both students who resided in barracks other than hers (Building 412 and 415 respectively). Both A1C Fields and Airman Hollis were assigned to the 3421 School Squadron, their present organization. They performed no duties with AB Patterson. Each of the three individuals knew that the other two were members of the same unit. Also, prior to 31 July 1982, she had no other social contact with Amn Hollis. Neither A1C Fields nor Air-

man Hollis ever had sexual relations with AB Patterson, and she did not have a poor reputation for chastity on Lowry AFB.

On 31 July 1982, AB Patterson was working her assigned tour of duty as dorm guard. Near the end of that shift, A1C Fields came up to her while she was working and showed her some pictures of their previous outing. She completed her tour of duty as dorm guard at about 1800 hours and was not scheduled for duty as dorm guard again until 0600 hours on 2 August 1982. At about 1945 hours on 31 July 1982, A1C Fields personally contacted her at her barracks (she had no private phone) and asked her if she wanted to go drink some beer at City Park. She stated that she had intended to go to the Airman's Club but agreed to meet him in the parking lot. Shortly thereafter, she met A1C Fields and Airman Hollis in the parking lot. After some discussion, she agreed to go with them to City Park. Neither A1C Fields nor Airman Hollis was scheduled for work that night. All three were not on leave but were lawfully away from Lowry AFB. A1C Fields drove them to City Park in his vehicle, which was registered on Lowry AFB at the time. There they drank some beer and some rum and coke and talked for about three hours. The group decided to go to a nightclub, so they left City Park and drove to "The Lift," also in Denver, Colorado, where they each had one drink during the approximately thirty minutes they stayed. After leaving "The Lift," the threesome drove around for a while and ended up driving towards the mountains near Denver. A1C Fields stopped at the Mother Cabrini Shrine, a public place located in the mountains 25 to 30 miles west of Lowry AFB. The Shrine is the place where the acts constituting the alleged offense occurred. After the incident, all three returned in A1C Fields' vehicle to Lowry AFB in the early morning hours of 1 August 1982. A1C Fields and Airman Hollis reported for their assigned duties on 2 August 1982. AB Patterson reported to her duty section on 2 August 1982 at about 0530 hours, at which time she reported the incident to her supervisor, who in turn put her in touch with Lowry AFB Security Police. Because of the alleged incident, AB Patterson's supervisor offered to allow her to have the day off. AB Patterson stated that she would prefer to stay busy and that she would work her shift when she returned from the Security Police. AB Patterson's supervisor detailed a person to take AB Patterson's place as dorm guard while she was at the Security Police. When AB Patterson returned to the Security Police in the morning on 2 August 1982, she resumed her duties as dorm guard.

Since the incident, Amn Hollis has continued his schooling and A1C Fields finished his schooling. A1C Fields is ready to return to his inactive Air National Guard status.

No complaint of the alleged incident was ever filed with any civilian law enforcement agency by either the Lowry AFB Security Police of AB Patterson, and no civilian law enforcement agency conducted an investigation of the alleged incident.

Since the incident AB Patterson has seen both A1C Fields and Airman Hollis in the base dining hall and in the squadron area on Lowry AFB, but she has not had any conversation with either.

Signed _____
BRUCE W. BECKER, Capt, USAF
Trial Counsel

Signed _____
DAVID L. THOMAS, Capt, USAF
Defense Counsel

Signed _____
DAVID G. EHRHARD, Capt, USAF
Asst Trial Counsel

Signed _____
CHARLES E. LATIMER, Capt, USAF
Asst. Defense Counsel

Signed _____
VERNON D. FIELDS, A1C, USAF
Accused

---

## APPENDIX B

MJ: The defense motion to dismiss based on lack of subject matter jurisdiction is granted.

With respect to this motion, the court makes the following findings:

At the time of the alleged offense, the accused was properly absent from Lowry Air Force Base;

Two, the alleged offense occurred approximately 25 to 30 miles west of Lowry Air Force Base;

Three, the alleged offense occurred at a place not under the military control;

Four, the alleged offense occurred within the territorial limits of the United States and not in an occupied zone of a foreign country;

Five, the alleged offense occurred in peacetime and is essentially unrelated to authority stemming from the war power of the United States;

Six, there is an absence of any significant connection between the military defendant's duties and the offense.

In this respect, the court further finds as follows concerning the 5th, 7th, 8th, 9th, 10th and 11th allegations contained in the jurisdictional basis set forth on Page 2 of the charge sheet:

a, with respect to allegation 5, although the accused and the victim met in a military dining hall, their meeting was happenstance and essentially unrelated to the military duties of either;

b, with respect to allegation 7, the victim's accompaniment of the accused to the site of the alleged offense derived from a social relationship;

c, with respect to allegation 8, the alleged offense stemmed essentially from a social, as opposed to a military, relationship;

d, with respect to allegation 9, although the accused and the victim were assigned to the same military unit, their association was essentially social and not predicated on a military relationship;

e, with respect to allegation 10, under the circumstances, the alleged offense did not pose a substantial threat to the peace and security of a military unit, community or base;

f, with respect to allegation 11, the military interest in deterring the alleged offense is neither distinct from nor greater than that of the civilian community and can be adequately vindicated in the civilian courts;

Seven, the victim was not engaged in the performance of any military duty at the time of the alleged offense;

Eight, civilian courts are present and available in which the case can be prosecuted;

Nine, there is essentially an absence of any flouting of military authority;

Ten, there is an absence of any significant threat to a military installation;

Eleven, there is an absence of any violation of military property; and

Twelve, the alleged offense is among those traditionally prosecuted in civilian courts.

Counsel for either side have anything further?

DC: Defense does not, Your Honor.

ATC: Prosecution does not, Your Honor.

MJ: Court is adjourned.