Sergeant Michael J. EVANS, Jr.,
FR220–76–7513, Petitioner,

v.

Colonel Michael A. KILROY, Military
Judge, Respondent.

Misc. Dkt. No. 91A–03.

U.S. Air Force Court of Military Review.

26 Sept. 1991.

Before LEONARD, RIVES and JAMES, Appellate Military Judges.

## OPINION OF THE COURT

LEONARD, Senior Judge:

Petitioner petitions us for extraordinary relief. He requests we issue a writ of mandamus directing respondent military judge to dismiss all charges[1] currently pending against petitioner because of a denial of a speedy trial. Pending resolution of petitioner's request, we ordered a stay of the proceedings in his case. We find that petitioner has not established grounds warranting extraordinary relief, and we dissolve the stay of his court-martial.

## FACTS

Petitioner was assigned to Yokota Air Base, Japan, from 24 July 1985 until 4 July 1989 when he was transferred to McGuire Air Force Base, New Jersey. Some time after he left Japan, an investigation implicated him in illegal drug activities. On 28 June 1990, temporary duty orders directed him to return to Yokota for disciplinary action. He arrived on the 4th of July.

Petitioner's preferral of charges occurred on 19 September 1990 and his Article 32 investigation 8–18 November 1990. Charges were referred on 19 December and served on petitioner on 20 December. A trial date was set for 27 December, but petitioner's defense counsel had not received the Article 32 report and was not ready to proceed. *See* R.C.M. 405(j)(3). Defense delays postponed the trial date until 26 February 1991 and preliminary sessions under Article 39(a) began on that date.

On 26 February 1991, petitioner made his first motion to dismiss the charges against him for a lack of a speedy trial. Respondent denied the motion. He found that 160 days had elapsed since preferral[2] of petitioner's charges and he allocated 82 days to the defense and 78 days to the government. Petitioner's request for extraordinary relief does not contest respondent's ruling on this first speedy trial motion.

The 26 February session of petitioner's trial also addressed petitioner's motion for a change of venue from Japan to the United States. Respondent's ruling on this motion set the stage for petitioner's second speedy trial motion and his request for extraordinary relief.

Petitioner requested the change of venue to provide compulsory process to secure the personal appearance of a Mr. Willingham, an essential defense witness, and to avoid alleged prejudicial effects of pretrial publicity on potential court members at Yokota Air Base. The government conceded that Willingham's testimony was "relevant, necessary, and essential to the defense" but otherwise opposed the change of venue motion. Trial counsel contended that a videotaped deposition of Willingham would be an adequate substitute for his trial appearance and that the defense did not show pretrial publicity would prevent selection of unbiased and untainted court members. Trial counsel requested respondent deny the change of venue motion, order a videotape deposition of Willingham, and grant a continuance to accomplish the deposition. Petitioner's counsel maintained that Willingham's testimony would directly rebut the in-court testimony of government witnesses and a fair trial would not be possible without Willingham's live in-court testimony.

Respondent found that Mr. Willingham was an essential defense witness and that he had refused to travel to Japan for peti-

---

1. Petitioner is charged with five violations of Article 112a, UCMJ, 10 U.S.C. § 912a, alleging use of marijuana, two periods of use of methamphetamine, distribution of marijuana, and distribution of methamphetamine.

2. At the time of this case, speedy trial accountability began with "notice to the accused of preferral of charges" not preferral of charges. *See* R.C.M. 707(a)(1). Effective 6 July 1991, the rule was changed to begin accountability with "preferral of charges." *See* Executive Order No. 12767, 27 Jun 1991, R.C.M. 707(a)(1).

tioner's court-martial. He further found the defense had failed to show that a videotape deposition would not be an adequate substitute for Willingham's personal appearance at trial. He directed a videotape deposition of Willingham and granted a continuance for the time necessary to complete it.

Between 28 February 1991 and 15 April 1991, the government attempted to conduct the deposition of Mr. Willingham. A deposing officer and a government representative were appointed. The deposing officer and government representative prepared a subpoena and asked the local federal marshall's office to serve it upon Willingham. The government representative talked with Willingham on the phone two times. Both times Willingham expressed reluctance to testify and stated his employer would not like him to take the time off necessary for the travel and deposition. Other attempts to contact Willingham directly were unsuccessful and the deputy from the marshall's office was unable to serve a subpoena on Willingham. On 16 April 1991, the government abandoned the effort to conduct the deposition and requested a new trial date.

Acting on the government's request, respondent set trial for 21 May 1991. Petitioner requested a delay of seven days and respondent reset the trial for 17 June 1991. On 24 May, respondent notified petitioner that the government wished to proceed to trial on 28 May and he offered petitioner the opportunity to begin trial anytime between 28 May and 17 June. Petitioner's counsel declined to proceed any earlier than 17 June.

On 14 June 1991, the second preliminary session began at Yokota Air Base. Among other motions, petitioner requested reconsideration of his earlier motion to dismiss all charges for lack of a speedy trial. The resolution of this motion depended on speedy trial accountability of 48 days from 28 February 1991 to 16 April 1991—the continuance respondent granted to depose Mr. Willingham.[3]

Before ruling on petitioner's motion, respondent entered findings stating a chronology of the efforts to locate and secure the presence of Mr. Willingham. He then found:

> [T]he dates between the 28th of February and the 16th of April were times in which an attempt was made to depose Mr. Joseph Willingham. And that the government, through phone calls, attempted phone calls, visits to the home and work place, messages, contact with parents, two changed dates of depositions, and two sets of subpoenas, made diligent effort to make deposition on [sic] Mr. Willingham.

Respondent then assigned the period 16 April to 14 June to the defense as attributable to defense requested delays. He made no allocation of the period 28 February to 16 April, but he denied petitioner's motion to dismiss his charges for lack of a speedy trial.

Petitioner contends respondent abused his judicial authority and disregarded controlling law in denying petitioner's second motion to dismiss all charges for lack of a speedy trial. The issue he presents for our resolution is:

> Did the prosecution prove by a preponderance of the evidence that the 82–day delay occasioned by its unsuccessful attempts to depose the defense witness was "granted at the request or with the consent of the defense," within the meaning of R.C.M. 707(c)(3), so as to relieve the government of speedy trial accountability between 28 February 1991 and 20 May 1991?

## STANDARD FOR WRIT OF MANDAMUS

Courts of Military Review are courts created by Congress to perform appellate functions and have the authority under the All Writs Act, 28 U.S.C. § 1651(a), to issue writs of mandamus and grant the relief

---

**3.** The government's position was that only the period 28 February to 16 April (48 days) was in contention because the government had made request for an immediate trial date on 16 April. Petitioner contended the period 28 February to 20 May (82 days) should be considered because the initial trial date set in response to the government's request was 21 May.

petitioner requests. Article 66, UCMJ, 10 U.S.C. § 866(c); *Dettinger v. United States,* 7 M.J. 216 (C.M.A.1979); *Andrews v. Heupel,* 29 M.J. 743 (A.F.C.M.R.1989); *United States v. Mahoney,* 24 M.J. 911 (A.F.C.M.R.1987).

█ However, writs of mandamus are a drastic remedy that should be reserved for truly extraordinary cases requiring limitation of a lower court to the lawful exercise of prescribed jurisdiction. *Harrison v. United States,* 20 M.J. 55, 57 (C.M.A.1985); *Porter v. Eggers,* 32 M.J. 583 (A.C.M.R.1990). This drastic remedy is not for cases where the error alleged is a mere abuse of discretion or even a gross error of the lower court. The petitioner must be seeking relief from a "judicial usurpation of power." *Will v. United States,* 389 U.S. 90, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967); *Murray v. Haldeman,* 16 M.J. 74 (C.M.A.1983).

█ When we review a case submitted to us for extraordinary relief, we are not at liberty to substitute our judgment for that of the trial judge. *United States v. Bowlden,* 16 M.J. 878 (A.F.C.M.R.1983); *United States v. Pereira,* 13 M.J. 632 (A.F.C.M.R.1982); *Porter,* 32 M.J. at 584. Our task is to determine if the trial judge exceeded his authority and ruled contrary to statute, settled case law, or valid regulation. *United States v. Labella,* 15 M.J. 228, 229 (C.M.A.1983); *Bowlden,* 16 M.J. at 878; *Porter,* 32 M.J. at 584.

█ Since raising a speedy trial violation contests the right of the military to proceed with trial, erroneous applications of speedy trial rules can justify use of writs of mandamus. *See Andrews,* 29 M.J. at 747; *Hall v. Thwing,* 30 M.J. 583 (A.C.M.R.1990). However, such cases have been limited to instances where the lower court ignored precedent clearly on point or failed to correctly apply the Rules for Courts–Martial to a clear case of government negligence. *Id.*

## SHOULD THE WRIT OF MANDAMUS BE ISSUED?

To determine if petitioner deserves the writ of mandamus, we must examine rules of speedy trial applicability to the facts of petitioner's case.

At the onset, we must note we are hampered in our resolution of this case by respondent's failure to state clearly findings and conclusions supporting his ruling. Two aspects of this imprecision are particularly troubling. First, respondent did not specifically assign to the government or the defense the time spent attempting to depose Mr. Willingham. Second, the record provides no clue as to the rule or case law relied upon by respondent to deny petitioner's motion.

█ Because of the difficulty such imprecise findings and analysis cause appellate courts, we will spend a moment to provide some guidance on this important matter. A military judge's rulings require clear, complete, and unambiguous findings of fact. *United States v. Reinecke,* 30 M.J. 1010, 1015 (A.F.C.M.R.1990); *United States v. Watts,* 21 M.J. 728, 729 (N.M.C.M.R.1985); R.C.M. 905(d). These findings should be logical and complete enough to alleviate any need to resort to other parts of the record for their meaning. *Reinecke,* 30 M.J. at 1015; *Watts,* 21 M.J. at 729. After stating the findings of fact, the military judge should state the legal basis for the decision, that is, the legal standards applied and the analysis of the application of these standards to the facts previously stated. *Id.* Finally, the military judge should state any conclusions made and the decision. *Reinecke,* 30 M.J. at 1015.

Petitioner's second speedy trial motion specifically asked respondent to readdress the issue of speedy trial in light of the time spent trying to depose Mr. Willingham. Although the parties disagreed about the number of days required for this effort,[4] they both agreed that this was the central issue for respondent's resolution. In ruling on petitioner's first speedy trial motion, respondent had already charged 78 days to

**4.** *See* footnote 3, *supra.*

the government. If the government were held accountable for the 48 days the government contends are at issue or the 82 days the petitioner proposes, the government would be responsible for either 126 days or 160 days. Despite the critical nature of the period, respondent's ruling never allocated the time to either the government or the defense. For the purpose of ruling on petitioner's request for extraordinary relief, we will assume respondent assigned this period to the defense or otherwise excluded it from the government's accountability.

In examining speedy trial issues, R.C.M. 707 and interpreting case law govern. When there is no pretrial restraint, R.C.M. 707(a) provides the general rule that an accused's trial shall begin within 120 days after notice of preferral of charges. If the government fails to comply with the 120 day requirement, the remedy is dismissal of the affected charges. R.C.M. 707(e).

The 120–day requirement has exceptions. R.C.M. 707(c) provides exclusions that may relieve accountability for certain time periods. Petitioner asserts that respondent incorrectly applied the exclusion provided in R.C.M. 707(c)(3). Since respondent provided no supporting legal basis for his ruling, we are uncertain whether he relied upon this provision, some other exclusion, or some other unknown ground. Because of this imprecision, we will not limit our determination of the correctness of respondent's ruling solely to an examination of R.C.M. 707(c)(3). We find that exclusions provided in R.C.M. 707(c)(1), (c)(3), and (c)(9) may apply to this case. R.C.M. 707(c)(1) excludes periods of delay resulting from other proceedings in the case. R.C.M. 707(c)(3) covers delays or continuances granted at the request or with the consent of the defense. R.C.M. 707(c)(9) provides an exclusion for any other period of delay for good cause.

The government takes the position that a deposition is a proceeding in a case and the R.C.M. 707(c)(1) exclusion for "Any periods of delay resulting from other proceedings in the case" would apply. Although depositions are not among the five types of "other proceedings" specifically listed as possible reasons for excludible delays, use of the words "any" and "including" in the introduction supports an impression that the list was not intended to be exclusive. Further, at least one court has found the list to be nonexclusive. In *Porter v. Eggers*, the Army Court of Military Review found proceedings in Panamanian courts contesting jurisdiction over a petitioner's case was a period of delay resulting from "other proceedings in the case." 32 M.J. at 585–86.

■ Petitioner contends respondent's ruling is clearly contrary to previous decisions of this Court and the Court of Military Appeals interpreting R.C.M. 707(c)(3). The government disagrees. We have previously addressed R.C.M. 707(c)(3) as it applied to a defense request to depose government witnesses during an Article 32 investigation. In *United States v. Raichle*, 28 M.J. 876, 879 (A.F.C.M.R.1989), we upheld the military judge's determination that the delay to depose the government witnesses was not a delay "granted at the request or with the consent of the defense." Further, in *United States v. Cook*, 27 M.J. 212 (C.M.A.1988), the court held that a delay of the case due to the defense asking the government to produce its witnesses at the Article 32 investigation was not attributable to the defense under R.C.M. 707(c)(3).

However, both *Raichle* and *Cook* are distinguishable from petitioner's case. In both cases, the government benefitted from the delay by using the information derived from the requested depositions or witnesses to perfect its case. *See Raichle*, 28 M.J. at 876; *Cook*, 27 M.J. at 214. In petitioner's case, there is no indication in the record that the government stood to gain anything from deposing the defense witness Mr. Willingham.

A more troubling aspect of R.C.M. 707(c)(3) is the question of what constitutes a delay "at the request or with the consent of the defense." Petitioner's record does not show a defense request for a delay attributable to the time spent trying to depose Mr. Willingham. On the contrary,

trial counsel requested the military judge grant the continuance to obtain the videotape deposition. Did the defense consent to the delay? It does not appear so. Petitioner requested a change of venue so Mr. Willingham could testify live and petitioner consistently maintained that anything less than Willingham's live testimony would deprive him of a fair trial. At the most, petitioner reluctantly agreed to participate in the deposition realizing it was all that respondent was willing to permit.

 Cases considering whether a delay occurred "at the request or with the consent of the defense" have required more than mere acquiescence by the defense to the delay. *See United States v. Givens*, 30 M.J. 294 (C.M.A.1990); *United States v. Longhofer*, 29 M.J. 22 (C.M.A.1989); *United States v. Cook*, 27 M.J. 212 (C.M.A.1988). The burden is on the government to bring an accused to trial within 120 days and to justify any delay in doing so. *Cook*, 27 M.J. at 215. The government also has the responsibility to ensure the record properly reflects the reason for exclusion of any delays it will seek to exclude from its accountability. *Givens*, 30 M.J. at 300; *Longhofer*, 29 M.J. at 28; *Cook*, 27 M.J. at 215.

 R.C.M. 707(c)(9) allows the government an escape from speedy trial accountability when "good cause" delay occurs. The subsection provides as examples of good cause "unusual operational requirements and military exigencies." Exclusions based on this provision must be due to "unusual events" that "actually cause a delay in the government's prepara-

tion of its case." *Longhofer*, 29 M.J. at 28. The period of delay attributable to the unusual event must also be reasonable. *Id.* In *Longhofer*, the unusual event subjected to R.C.M. 707(c)(9) analysis was the time required to obtain a security clearance for a civilian defense lawyer.

 After examining all three subsections of R.C.M. 707(c), we do not find the interpretation of these provisions so settled as to make respondent's denial of petitioner's motion a "judicial usurpation of power." We agree that R.C.M. 707(c)(3) does not provide an adequate basis for the denial of petitioner's speedy trial motion. The record fails to show the delay to depose Mr. Willingham occurred "at the request or with the consent of the defense." However, given the present state of case law interpreting R.C.M. 707(c)(1) and R.C.M. 707(c)(9), either subsection could possibly provide a basis for respondent's ruling.

We find petitioner did not show that respondent exceeded his authority or that he ruled contrary to statute, settled case law, or valid regulation. Accordingly, petitioner is not entitled to extraordinary relief. His petition is denied and the stay of his proceedings ordered by this Court is dissolved.

Judges RIVES and JAMES concur.