Private First Class David P. HALL, 420–70–0063, United States Army,
Petitioner,

v.

Lieutenant Colonel James B. THWING, Military Judge; and United States of America, Respondents.

ACMR Misc. 8903753.

U.S. Army Court of Military Review.

1 March 1990.

For Appellant: Colonel Robert B. Kirby, JAGC, Lieutenant Colonel Russell S. Estey, JAGC, Major Samuel R. Maizel, JAGC, Captain Jeffrey J. Fleming, JAGC, Captain W. Renn Gade, JAGC (on brief), Captain Jeffrey M. Reed, JAGC (on brief).

For Appellee: Colonel Alfred F. Arquilla, JAGC, Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Major Martin D. Carpenter, JAGC, Captain Marcus A. Brinks, JAGC, Captain John J. Hogan, JAGC (on brief).

Before KUCERA, GILLEY and GIUNTINI, Appellate Military Judges.

## OPINION OF THE COURT

GILLEY, Judge:

The petitioner prays for this court to order dismissal of the charges against him because the respondent military judge failed to dismiss the charges even though the government did not meet the requirements of Manual for Courts–Martial, United States, 1984, Rule for Courts–Martial 707 [hereinafter R.C.M.] to assure him a speedy trial. Granting this petition is an extraordinary action in the nature of a

mandamus, since the petition arises from the respondent's denial of the petitioner's motion to dismiss the charges on the same grounds urged to us.

On 18 March 1989, the appellant was involved in an automobile accident from which arose the present charges of drunk driving resulting in personal injury and fleeing the scene of an accident, in violation of Articles 111 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 911 and 934 (1982). The respondent found that the appellant was placed on restriction in lieu of arrest on 22 March 1989. *See* R.C.M. 304(a)(2). Accordingly, the respondent ruled that the restraint triggered the government's accountability to bring the petitioner to trial within 120 days of 22 March 1989. *See* R.C.M. 707(a)(2). Thereby, the government was accountable to bring the appellant to trial by 20 July 1989.

Sometime in May or June of 1989, the government notified the German authorities of the case, triggering a requirement for the German government to assert its jurisdiction within twenty-one days should it choose not to waive jurisdiction to the United States. *See* Agreement to Supplement the Agreement Between the Parties to the North Atlantic Treaty Regarding the Status of Their Forces with Respect to Foreign Forces Stationed in the Federal Republic of Germany, *opened for signature* August 3, 1959, art. 19, para. 3, 14 U.S.T. 531, T.I.A.S. No. 5351, at 23. On 27 June 1989, the government received informal notification that Germany would not recall this case for trial; however, documentation of that determination was not received until 25 August 1989.

On 5 September 1989, the government preferred the charges against the petitioner. On 5 October 1989, the government ended the restriction of the petitioner that began on 22 March 1989. On 11 October 1989, the government referred the charges to trial by general court-martial. On 8 November 1989, the accused was arraigned. Eight days in September were properly treated as defense delay based on their request, and eight days (24 October to 1 November) were excluded because the peti-

tioner was hospitalized. In his findings accompanying the denial of the motion to dismiss the charges for failure to bring the petitioner to trial within 120 days as required by Rule for Courts–Martial 707(a), the military judge found the ninety-seven days (22 March to 27 June) for German authorities to decide whether to exercise its primary jurisdiction were excludable from government accountability. The military judge stated it "was not possible for the prosecution in this case to proceed any earlier in its processing of this case...." Consequently, he found that only 117 days of the time from the imposition of restraint until arraignment, 231 days later, were accountable to the government. Accordingly, the respondent found that no violation of the 120–day rule occurred.

## I. Exercise of Extraordinary Writ Jurisdiction

■ At the outset, we note that we have extraordinary writ jurisdiction over cases, such as this one, in which we potentially have appellate jurisdiction. *See Longhofer v. Hilbert*, 23 M.J. 755, 756 (A.C.M.R.1986), *aff'd*, 29 M.J. 22 (C.M.A.1989) (quoting the "All Writs Act", 28 U.S.C. § 1651 (1982)); *Barnett v. Persons*, 4 M.J. 934 (A.C.M.R. 1978).

We find that we should exercise that jurisdiction in this case. Mindful that mandamus is a "drastic instrument" reserved for extraordinary situations, we find that we are dealing with an erroneous ruling of a military judge that could readily recur and that the petitioner has raised a substantial argument that the government has no right to try him at all. *See Harrison v. United States*, 20 M.J. 55, 57 (C.M.A.1985) (quoting *United States v. Labella*, 15 M.J. 228 (C.M.A.1983)). In *Andrews v. Heupel*, 29 M.J. 743, 747 (A.F.C.M.R.1989), the court exercised its extraordinary writ jurisdiction to review a speedy trial issue. Moreover, in the context of fulfilling the United States' policy of receiving release of jurisdiction from a host nation to try soldiers for their alleged offenses, we should not delay ruling on this issue until a trial occurs. *See* Statement Accompanying Senate Advice and Consent to Ratification of

NATO SOFA, *reprinted in* 4 U.S.T. 1828 (July 15 1953) [hereinafter Senate Statement].

## II. Speed Trial

■ The respondent military judge failed to apply Rule for Courts–Martial 707(a) properly. In *United States v. Carlisle*, 25 M.J. 426, 428 (C.M.A.1988), the Court of Military Appeals announced that *"ON DAY NUMBER 1, EVERYONE ASSOCIATED WITH A CASE SHOULD KNOW WHAT DAY WILL BE NUMBER 120."* The court reiterated that bright-line test in *United States v. McCallister*, 27 M.J. 138, 140 (C.M.A.1988), by stating "all accused, whether incarcerated or not, must, consistent with R.C.M. 707 and with specific exceptions, be brought to trial within 120 days from 'notice to the accused of preferral of charges' or from 'imposition of restraint'...."

No justification for delay is likely from German consideration of whether to exercise its jurisdiction. Generally, notification to German authorities is to be made promptly after an incident. U.S. Army Europe Reg. No. 550–50, Foreign Countries: Exercise of Foreign Criminal Jurisdiction Over US Personnel (25 Nov. 1980), para. 11a(1) [hereinafter USAREUR Reg. 550–50]. German prosecutors have only twenty-one days from the date of American notification of a serious offense within its primary jurisdiction to exercise its right to try the case. Thereafter, the German authorities may not unilaterally reassert jurisdiction, even though the American government would give sympathetic consideration to an out-of-time German request to exercise jurisdiction. *See* Davis, *"Waiver and Recall of Primary Concurrent Jurisdiction in Germany"*, The Army Lawyer, May 1988, at 30. Thus, if the notification system were functioning properly, the government would have confirmation well before 120 days of either preferral of charges or restraint that the German authorities elected not to exercise their primary jurisdiction, or that the German authorities indeed would exercise jurisdiction. For example, in this case, even though notification to the German authorities was de-

layed until "May or June," in fact the government was notified on 27 June that the German authorities waived exercise of their jurisdiction. While written confirmation was not received until 25 August, the government is responsible to inquire about it, certainly in time to permit trial of this petitioner by the 120th day of restriction, which was 20 July 1989.

■ Exceptions to the 120–day rule are specified in R.C.M. 707. Only two possibly apply to this situation:

(6) Any period of delay resulting from the absence or unavailability of the accused.

(9) Any other period of delay for good cause, including unusual operational requirements and military exigencies.

R.C.M. 707(c)(6 & 9).

■ Both of these exceptions require causation. The government's reason for delay must actually have caused the government to be unable to meet the 120–day rule. For example, we could construe that the accused is "unavailable" for trial if the Germans are considered properly not to have released jurisdiction by the 120th day. *See United States v. Longhofer*, 29 M.J. 22, 27 (C.M.A.1989). That was not the case here. Contrary to American regulations, the United States government delayed the trial. The Germans had released exercise of jurisdiction well before 120 days ran and, with due diligence, the government would have received confirmation of that by 20 July.

The respondent reasoned, however, that the government's accountability did not begin until the Germans waived their exercise of jurisdiction, that is, 27 June 1989, because the government could not in fact try the appellant until they had official confirmation. The military judge's ruling that no processing of the case for trial by court-martial could occur until 27 June 1989 is plainly without basis. A rule not to start the clock of R.C.M. 707 until the Germans release jurisdiction would cavalierly impose a justification for delay that in most cases does not cause delay at all. Rationalizing that the government was awaiting German release of jurisdiction and may avail itself of an exception to the 120–day rule is not

appropriate, especially when the government has not been reasonably diligent in pursuing pretrial matters. Here, the government failed to investigate, to prefer charges, or to conduct an Article 32 hearing until 171 days after the incident occurred. The cause for the delay in this case was not the German's tardiness in certifying the release of their jurisdiction, but the government's inattentiveness in ensuring that mandated processing of this case was followed.

Moreover, even if there was causation, the government will not be relieved of accountability unless the delay was reasonable. *See* R.C.M. 707. The government by regulation has established the standard of reasonableness for cases of concurrent jurisdiction with host nations:

Regardless of whether jurisdiction also may be invoked by a foreign authority, in all cases in which disciplinary action under the Uniform Code of Military Justice is appropriate, US [sic] military commanders concerned will ensure that pretrial action (e.g., investigation, preferral of charges, referral of charges to trial, as appropriate) is accomplished expeditiously and is not delayed pending resolution of the jurisdictional issues in the case. For Army or Navy personnel, US [sic] authorities will not bring the individual to trial, impose nonjudicial punishment, or make any other final disposition of the case until the approval of the USCR [U.S. Country Representative] to such action has been obtained.

U.S. Army Europe Reg. 550–50, para. 13b.

Headquarters, U.S. Army Europe, and Seventh Army has also prescribed that "[w]hen charges are considered appropriate, they will be preferred, and all investigative procedures, including an Article 32 investigation, if appropriate, will be completed. U.S. Army Europe Reg. 27–10, Legal Services: Military Justice, para. 7b (3 July 1985). "Cases subject to the exercise of host nation jurisdiction will not be tried until the local legal liaison authority or US country representative has provided confirmation of waiver of jurisdiction." *Id.* at para. 7d.

The government's reliance on *United States v. Higgins,* 27 M.J. 150 (C.M.A.1988), *cert. denied,* 489 U.S. 1015, 109 S.Ct. 1128, 103 L.Ed.2d 190 (1989), is misplaced. By the referenced regulations, the government mandated that processing of the charges against the petitioner proceed concurrently with the German consideration of whether to exercise its jurisdiction. Instead, no movement appears to have occurred until after official confirmation of the German release of jurisdiction was belatedly received on 25 August 1989. Government motion appears to have begun only then, 156 days after the appellant's restraint began. Moreover, the restraint continued until 5 October, another thirty days. No reason whatsoever is established for that delay. The record does refer to a German investigation, but no showing was made that the government could not obtain it or should not have tried to obtain it in order to meet the 120–day mandate. Thus, in beginning its date of accountability, the government is precluded from use of the date charges were preferred, 5 September 1989, as well as 27 June 1989, when the Germans released their primary right to exercise jurisdiction. *See* R.C.M. 707(b)(2).

The commander may not have known in fact that his removal of the petitioner's pass privilege had been enforced by a sergeant as restriction, but we agree with the respondent military judge that the government must be held to know of that restriction. Further, the question is not whether the regulations were designed to benefit an accused, but to find what was reasonable under the circumstances, which is the premise of Rule for Courts–Martial 707(c)(9). Government standards frequently provide a clear measure of reasonableness. In view of the cited regulations, reinforced by the common practice of release by the German authorities of their primary jurisdiction, it would be patently unreasonable for the government to sit on its hands while the German government considered whether to exercise jurisdiction. American regulations state that processing of appropriate charges will not be delayed for even the three weeks normally allowed for German consideration in serious cases. Moreover, such governmental activity would tend to undercut the Senate's edict requiring the United States authorities to

seek maximum exercise of American jurisdiction over its personnel. In fact, German exercise of primary jurisdiction instead of their release of such cases to the Army is rendered more likely when the Army is accountable for 219 days of prosecutorial staleness from incident to arraignment. In view of the documents plainly expressing the American policy for prompt processing while German consideration is pending, that consideration would be recognized under R.C.M. 707 only if German consideration were actually pending when the 120th day arrived, or if American authorities could not receive German confirmation of waiver of jurisdiction, despite reasonable efforts. In reality, either of those situations would be most unlikely.

Rule for Courts–Martial 707(e) provides that the remedy for failure to comply with the provisions of that Rule shall be dismissal of the charges upon timely motion of the accused. That remedy applies even though no charges had been preferred before the 120–day clock ran. See R.C.M. 304(a) (pretrial restraint may be imposed before and during disposition of offenses); *United States v. McCallister*, 27 M.J. at 140.

Since we find no exception to the 120–day rule applicable, we find further that the respondent military judge erred to the substantial prejudice of the petitioner by denying his motion for dismissal based upon lack of speedy trial as defined in Rule for Courts–Martial 707(a). Therefore, the petitioner should not be tried by a court-martial or await the resolution of this issue on appeal. *See United States v. Caputo*, 18 M.J. 259 (C.M.A.1984); *Murray v. Haldeman*, 16 M.J. 74 (C.M.A.1983).

The extraordinary relief sought by petitioner is granted. The record of trial will be returned to the military judge who is directed to dismiss forthwith the charges and specifications.

Senior Judge KUCERA and Judge GIUNTINI concur.