Sergeant Karl H. PASCASCIO,
094–44–3335, United States
Army, Petitioner,

v.

Lieutenant Colonel William G. FISCHER,
Military Judge; and, The United States
of America, Respondents.

ACMR MISC 9102602.

U.S. Army Court of Military Review.

31 March 1992.

For Petitioner: Captain Michael P. Moran, JAGC, Captain Timothy M. Lawlor, JAGC (on brief).

For Respondents: Colonel Dayton M. Cramer, JAGC, Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Lieutenant Colonel Joseph A. Russelburg, JAGC, Captain Gary A. Khalil, JAGC (on brief).

Before NAUGHTON, WERNER, and HAGAN, Appellate Military Judges.

OPINION OF THE COURT ON PETITION FOR EXTRAORDINARY RELIEF IN THE NATURE OF A WRIT OF MANDAMUS

WERNER, Judge:

The petitioner has filed this Petition for Extraordinary Relief in order to secure a writ of mandamus against the military judge in this ongoing general court-martial.[1] He simultaneously filed a motion to stay court-martial proceedings pending adjudication of his petition which motion was granted by this court. Petitioner prays that we reverse the respondent military judge's ruling denying his motion to dismiss the charges. He argues that the judge's action constitutes a denial of his right to a speedy trial under the sixth amendment to the Constitution of the United States; Article 10, Uniform Code of Military Justice, 10 U.S.C. § 810 (1982) [hereinafter UCMJ]; and Manual for Courts–Martial, United States, 1984, Rule for Courts–Martial 707 [hereinafter M.C.M., 1984 and R.C.M.]. He seeks an order directing the respondents to dismiss the pending charges with prejudice. For reasons set forth below, we decline to issue the writ.

---

1. Charges are currently pending before a general court-martial convened in Germany for desertion, larceny (five specifications), fraudulent making of a check, and wrongful impersonation of an official of the United States government in violation of Articles 85, 121, 123a, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 885, 921, 923a, and 934 (1982), respectively.

## I.

There is ample authority supportive of our jurisdiction to issue writs of mandamus protective of an accused's right to speedy trial. *Dettinger v. United States*, 7 M.J. 216 (C.M.A.1979); *Porter v. Eggers*, 32 M.J. 583 (A.C.M.R.1990); *Hall v. Thwing*, 30 M.J. 583 (A.C.M.R.1990). The criteria governing the exercise of such power were succinctly summarized by Senior Judge Foreman in *Porter v. Eggers:*

A writ of mandamus is a drastic remedy which should be invoked only in truly extraordinary situations. It is designed to confine a lower court to the lawful exercise of its prescribed jurisdiction. Such a drastic remedy is justified only under exceptional circumstances amounting to more than gross error; it must amount to a judicial usurpation of power. In reviewing a petition for extraordinary relief, we are not at liberty to substitute our judgment for that of the trial judge. Instead, we must determine whether the trial judge exceeded his authority and ruled contrary to statute, settled decisional law or valid regulation. Based upon this body of law, we have determined that we are not at liberty to consider matters outside the record of trial as urged by the government, but must instead confine our determination solely to the facts that the military trial judge had before him in making his determination to deny petitioner's motion to dismiss for lack of speedy trial.

32 M.J. at 584 (citations omitted).

Judge Foreman's opinion was based, in substantial part, upon *United States v. Labella*, 15 M.J. 228 (C.M.A.1983). In that case, the Court of Military Appeals refused to grant a petition for a writ of mandamus which would have reversed a trial judge's denial of a defense motion to dismiss for lack of jurisdiction. The court indicated that motions to dismiss concern interlocutory matters which are usually addressed to the discretion of the trial judge, and which are reviewable for abuse of that discretion in the normal course of appellate review. Although it did not elaborate, the court intimated that review of such interlocutory matters through petitions for extraordinary relief was "not available." [2] However, review of interlocutory trial rulings by extraordinary writ was proper in situations where the trial judge's action amounted to a "usurpation of power" or could be characterized as "an erroneous practice which is likely to recur." 15 M.J. at 229 (citations omitted).

In *Murray v. Haldeman*, 16 M.J. 74 (C.M.A.1983), the court recognized three additional bases for granting a petition for extraordinary relief: (1) where the petitioner raises "substantial arguments denying the right of the military to try [him]" (citing *Noyd v. Bond*, 395 U.S. 683, 89 S.Ct. 1876, 23 L.Ed.2d 631 (1969); *Cooke v. Orser*, 12 M.J. 335 (C.M.A.1982); *Wickham v. Hall*, 12 M.J. 145 (C.M.A.1981)); (2) where prompt review will conserve time, energy, cost and the ordeal of a trial (citing *Shepardson v. Roberts*, 14 M.J. 354 (C.M.A. 1983)); and (3) where the issues to be resolved are "recurrent" and will inevitably be faced by appellate courts in many future cases (citing *Labella*, 15 M.J. at 229). *Murray*, 16 M.J. at 74, 76–77. None of these cases involved petitions for extraordinary relief from a denial of a speedy trial motion.

▮ Citing the twin rationales of *Labella*, and the "right not to be tried" rationale of *Murray*, courts of military review have employed writs of mandamus in reversing trial judges' denials of speedy trial motions and in ordering dismissal of charges. *Hall v. Thwing*, 30 M.J. at 582; *Andrews v. Heupel*, 29 M.J. 743 (A.F.C.M.R.1989).[3]

---

2. This approach was consistent with the court's long-standing policy that extraordinary writs are "not intended to be used as a vehicle for piecemeal appeals from interlocutory rulings." *West v. Samuel*, 45 C.M.R. 64, 66 (C.M.A.1972); *Font v. Seaman*, 43 C.M.R. 227 (C.M.A.1971).

3. In its discussion of the principles governing the issuance of writs of mandamus in *United*

States v. Labella and Murray v. Haldeman, the Court of Military Appeals did not exhaust all facets of this extensive and sometimes conflicting area of the law. Perhaps as a result, the courts of military review have tended to evaluate writ of mandamus petitions in the context and terminology of the rationales set forth in those cases without discussing other, material

Applying these criteria, we hold that the petitioner here has failed to demonstrate that the respondent military judge's denial of his motion to dismiss usurped judicial power, constituted a recurring erroneous practice, or abridged his "right" not to be tried.

## II.

The evidence presented during the pretrial proceedings reveals the following chronology of events:

26 February 1991: Petitioner was apprehended and incarcerated by German authorities for committing the offense of "marriage swindling," a fraud offense, in violation of German law. During their investigation of petitioner, he informed them of his name, date of birth, social security number and that he was a soldier in the United States Army who had deserted his unit.

27 February: The German authorities notified the Army's Criminal Investigation Command (CID) of petitioner's apprehension and requested assistance in verifying his identity. The Germans indicated they would not relinquish jurisdiction to the Army until petitioner's identity was confirmed.

28 February: CID received telephonic confirmation from the Army Crime Records Center in the United States that, in January 1983, an individual with petitioner's name was dropped from the rolls as a deserter from an Army unit in Germany.

28 February to 20 May: Despite efforts to verify the petitioner's identity, significant delays in identifying him occurred which were caused by: The absence of appellant's fingerprints on file with the Crime Records Center; the lack of a clear photograph of petitioner in his personnel file in the United States; the fact that the petitioner possessed apparently forged identity documents which he had been using to perpetrate marriage fraud; and the fact that the petitioner falsely told CID during one of their interviews that he was a citizen of Honduras, not the United States.

20 May: A CID agent in Germany was informed by his counterpart in the United States at the personnel records center that petitioner was in fact a deserter from the Army. However, upon the advice of the CID's legal advisor, prompt action was not taken to request the Germans to deliver petitioner to military control.

20 June: During a CID interview, petitioner revealed information tending to corroborate information in his personnel file. Handwriting exemplars and photographs of petitioner were taken.

2–3 July: Positive identification was made after comparing photographs and handwriting exemplars with photos and exemplars in petitioner's military records.

4 July: Petitioner was released to military authorities and confined in a military confinement facility.

16 August: Charges preferred. Defense requested and obtained a delay from 29 August to 16 September to prepare for the Article 32, UCMJ, investigation. Petitioner was hospitalized and Article 32 investigation was rescheduled for 17 October.

17 October: Article 32 investigation was held. Petitioner requested examination by a sanity board.

13 November: Sanity board held. Article 39(a) session held during which the petitioner indicated a desire to move for

considerations not enumerated therein. However, the Supreme Court and circuit courts of appeal have declined to issue writs of mandamus on grounds that have included the petitioner's failure to exhaust remedies in the lower court, *United States v. Garber,* 413 F.2d 284 (2d Cir.1969); or the availability of an adequate alternative remedy such as appeal from the final judgment, *Parr v. United States,* 351 U.S. 513, 76 S.Ct. 912, 100 L.Ed. 1377 (1956); *Roche v. Evaporated Milk Association,* 319 U.S. 21, 63 S.Ct. 938, 87 L.Ed. 1185 (1943); *See generally,* Hassman, "Propriety of Issuing Writ of Mandamus in Federal Criminal Proceedings," 29 ALR Fed 218 (1976). While these considerations are not decisive in the instant case, their possible application in other proceedings involving petitions for extraordinary relief cannot be discounted.

dismissal for denial of speedy trial. However, as trial defense counsel required additional time to research the issue, the defense moved for a continuance. The military judge granted the motion and scheduled the arraignment and hearing on the speedy trial issue for 4 December.

On 4 December 1991, the petitioner was arraigned and, after a hearing, the military judge denied his motion to dismiss. In so ruling, the judge found, *inter alia*, that: the government's accountability for the delay began on 21 May 1991; after deducting the time for actual and constructive defense delays, total government delay amounted to one hundred and ten days; and the government did not violate R.C.M. 707, as amended by Change 5 to the Manual for Courts–Martial, since the government's accountability did not exceed one hundred and twenty days.

### III.

The primary focus of the petitioner's argument in his specific allegations is that the military judge erred by: (1) determining the inception date for government accountability as 21 May 1991 rather than early March; (2) finding the petitioner accountable for the delay resulting from processing his request for a sanity board; (3) determining that the petitioner's lengthy absence and uncooperativeness after having been incarcerated were extraordinary circumstances caused by him that contributed to delay of the proceedings; and (4) applying R.C.M. 707, as modified by Change 5 to the Manual, rather than its predecessor provision.[4] Assuming, *arguendo*, that these allegations constitute errors at all, we hold that none of these asserted grounds for relief warrants issuance of an extraordinary writ. The first three allegations involve factual determinations for which there is evidentiary support in the record of proceedings. *See United States v. Longhofer*, 29 M.J. 22, 25 (C.M.A. 1989); *United States v. Burris*, 21 M.J. 140, 144 (C.M.A.1985); and the fourth relates to a recently enacted provision of the Manual for which there is no settled interpretation of law. *See Evans v. Kilroy*, 33 M.J. 730, 735 (A.F.C.M.R.1991); *United States v. Bogan*, 13 M.J. 768, 772 (A.C.M.R. 1982). In no event can the military judge's findings and conclusions with respect to these matters be characterized as usurpations of judicial power or erroneous recurring practices. At best, they may constitute factual and/or legal errors which are more appropriately reviewed in the normal course of appellate review.

### IV.

Petitioner has alternatively argued that we should grant the writ because he has raised "substantial arguments that the government has no right to try him at all."[5] He cites *Hall v. Thwing*, wherein a panel of this court, citing *Andrews v. Heupel* and *Murray v. Haldeman*, issued a writ of mandamus that reversed a military judge's denial of a defense motion to dismiss for lack of speedy trial. Although we agree with the applicability of the underlying jurisdictional predicate cited in *Hall v. Thwing*—that a writ of mandamus may be issued where the government's right to try an accused is questionable—we do not believe this principle mandates review of speedy trial questions, such as that presented in the instant case, by extraordinary writ proceedings.[6]

---

**4.** Section 4 of Change 5 to the Manual for Courts–Martial provides in subparagraph d: "The amendments made to Rules for Courts–Martial 707 and 1010 shall apply only to cases in which arraignment occurs on or after 6 July 1991." Notwithstanding this provision which, on its face, appears to support the military judge's determination, the petitioner contends the judge should have applied the predecessor provision.

**5.** He also argues that we should issue the writ in order to fulfill "the United States' policy of committing itself to try a servicemember for his alleged offenses after the host nation has released jurisdiction with the expectation that such a trial will take place." This "principle," taken from *Hall v. Thwing, supra,* appears to have no authoritative support and we decline to apply it here.

**6.** In this regard, we have considered the holdings of *Murray v. Haldeman* and *Andrews v. Heupel,* but find them inapposite. *Murray,* wherein the Court of Military Appeals first enunciated the principle, involved a challenge to

Despite the fact that appellant's assertion that his "right not to be tried" was abridged by the military judge's action is supported by language in this Court's opinion in *Hall v. Thwing*, its precedential value appears untenable in view of the Supreme Court's opinion in *United States v. MacDonald*, 435 U.S. 850, 98 S.Ct. 1547, 56 L.Ed.2d 18 (1978).

Captain Jeffrey MacDonald, an Army physician stationed at Fort Bragg, North Carolina, was charged in 1970 by military authorities with murdering his wife and two daughters. After conducting an investigation under Article 32, UCMJ, and determining that there was insufficient evidence to warrant prosecution, the Army dismissed the charges. Subsequently, Captain MacDonald was discharged from the service. However, further investigation of the murders led to Captain MacDonald's indictment for those crimes by a federal grand jury in the United States District Court for the Eastern District of North Carolina in 1975. MacDonald moved to dismiss the indictment on, *inter alia*, double jeopardy and speedy trial grounds. The District Court denied both motions but the Fourth Circuit Court of Appeals, after permitting an interlocutory appeal from the trial judge's rulings, reversed.

As related in the Supreme Court's unanimous opinion:

The Court of Appeals panel majority recognized that the denial of a pretrial motion in a criminal case generally is not appealable. The court, however, offered two grounds for its assumption of jurisdiction in this particular case. It stated, first that it considered respondent's speedy trial claim to be pendent to his double jeopardy claim, the denial of which [*United States v.*] *Landsdown* [*Lansdown,* 460 F.2d 164 (4th Cir.1972)] had held to be appealable before trial. Alternatively, although conceding that "[n]ot every speedy trial claim ... merits an interlocutory appeal," and that "[g]enerally, this defense should be reviewed after final judgement," the court stated that it was "the extraordinary nature of MacDonald's case that persuaded us to allow an interlocutory appeal." 531 F.2d [196], at 199.

On the merits, the majority concluded that respondent had been deprived of his Sixth Amendment right to a speedy trial. 435 U.S. at 852–53, 98 S.Ct. at 1548–49.

The Supreme Court granted certiorari in order to review the jurisdictional question of whether the Court of Appeals exceeded its authority in granting an interlocutory appeal from the trial judge's denial of the speedy trial motion. The Court first observed that finality of judgment is a required predicate for federal appellate jurisdiction which has been embodied in 28 U.S.C. § 1291.[7] Interlocutory appeals are

---

military jurisdiction, not the right to a speedy trial. As the court noted, "The policies that limit military tribunals to trial of service-connected offenses, and to jurisdiction over people who in fact are in service, represents vitally important limits that deserve prompt and effective protection." *Murray,* 16 M.J. at 76. (*Quoting* Professor Edward H. Cooper.) *Andrews,* although decided in terms of a violation of petitioner's right to a speedy trial, actually involved an error of law by the trial judge of sufficient magnitude as to constitute a usurpation of power. The petitioner challenged the respondent military judge's refusal to dismiss charges for denial of his right to a speedy trial in violation of R.C.M. 707 despite the fact that the evidence established there was a delay in excess of one hundred and twenty days chargeable to the government. The Air Force Court of Military Review held:

We find the respondent incorrectly applied the provisions of R.C.M. 707(b)(2), when he

concluded that the petitioner's release from pretrial restraint was for a significant period thereby tolling the running of the speedy trial clock. We believe the provisions of that Rule only contemplate a situation wherein an accused has been released from pretrial restraint before R.C.M. 707(a)(2), has been violated. To hold, as did respondent here, that the Rule is applicable even if an accused has already been denied a speedy trial would sanction violations of an accused's speedy trial rights under the sixth amendment and Article 10 and discourage protection of command and societal interests in the prompt administration of justice. M.C.M.1984, App. 21, Rule 707.

29 M.J. at 748.

7. The statute provides:

The courts of appeals (other than the United States Court of Appeals for the Federal Circuit) shall have jurisdiction of appeals from

not favored because they encourage delay that is "fatal to the vindication of the criminal law." *Id.* at 853–54, 98 S.Ct. at 1548–49. An exception to the general prohibition against piecemeal appellate review, known as the "collateral order" exception, permits interlocutory appeals if the trial court's ruling satisfies three conditions. *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). First, the ruling must fully dispose of the question and not leave the matter "open, unfinished or inconclusive." Second, it must resolve an issue "completely collateral to the cause of action." Third, it must involve an important right which would be irreparably lost if review had to await final judgment. *Id.* at 546, 69 S.Ct. at 1225. The "collateral order" exception had been applied to permit interlocutory appeal of a trial judge's denial of a motion to reduce bail, *Stack v. Boyle*, 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 3 (1951), and denial of a motion to dismiss for double jeopardy, *Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977).

The Court held it was "clear that an order denying a motion to dismiss an indictment on speedy trial grounds does not satisfy [the aforementioned] criteria. The considerations that militated in favor of appealability in *Stack v. Boyle* and *Abney v. United States* are absent or markedly attenuated in the present case." 435 U.S. at 857, 98 S.Ct. at 1551. The Court reasoned that first, "most speedy trial claims, therefore, are best considered only after the relevant facts have been developed at trial.... Hence, pretrial denial of a speedy trial claim can never be considered a complete, formal, and final rejection by the trial court of the defendant's contention; rather, the question at stake in the motion to dismiss necessarily 'remains open, unfinished [and] inconclusive' until the trial court has pronounced judgement."

*Id.* at 858–59, 98 S.Ct. at 1551–52 (quoting *Cohen*, 337 U.S. at 546, 69 S.Ct. at 1225).

Second, speedy trial claims are not "sufficiently independent of the outcome of the trial to warrant pretrial appellate review [as those claims] would be largely satisfied by an acquittal." Unlike double jeopardy motions, which are completely separate from the question of guilt or innocence, "[t]he essence of a defendant's Sixth Amendment claim in the usual case is that the passage of time has frustrated his ability to establish his innocence of the crime charged. Normally, it is only after trial that that claim may fairly be assessed." *Id.* 435 U.S. at 859–60, 98 S.Ct. at 1552–53.

Third, interlocutory review of adverse speedy trial rulings, unlike appeals from denial of double jeopardy and bail reduction motions, does not involve "an important right" which would be irreparably lost "if review had to await final judgment." *Id.* at 860, 98 S.Ct. at 1552. The Court also stated:

> There perhaps is some superficial attraction in the argument that the right to a speedy trial—by analogy to these other rights—must be vindicated before trial in order to insure that no nonspeedy trial is ever held. Both doctrinally and pragmatically, however, this argument fails. Unlike the protection afforded by the Double Jeopardy Clause, *the Speedy Trial Clause does not, either on its face or according to the decisions of this Court, encompass a "right not to be tried"* which must be upheld prior to trial if it is to be enjoyed at all.

*Id.* at 860–61, 98 S.Ct. at 1552–53. (Emphasis added).

The Court also pointed out that an interlocutory appeal of a denial of a speedy trial motion would actually increase delay in the prosecution of a case and tend to defeat important policy considerations inherent in the Speedy Trial Clause to include:

all final decisions of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, except where a direct review may be had in the Supreme Court. The juris-

diction of the United States Court of Appeals for the Federal Circuit shall be limited to the jurisdiction described in sections 1292(c) and (d) and 1295 of this title.

As amended Apr. 2, 1982, Pub.L. 97–164, Title I, § 124, 96 Stat. 36.

Among other things, delay may prejudice the prosecution's ability to prove its case, increase the cost to society of maintaining those defendants subject to pretrial detention, and prolong the period during which defendants released on bail may commit other crimes. *Dickey v. Florida*, 398 U.S. 30, 42 [90 S.Ct. 1564, 1571, 26 L.Ed.2d 26] (1970).

Allowing an exception to the rule against pretrial appeals in criminal cases for speedy trial claims would threaten precisely the values manifested in the Speedy Trial Clause. And some assertions of delay-caused prejudice would become self-fulfilling prophecies during the period necessary for appeal.

*Id.* 435 U.S. at 862, 98 S.Ct. at 1553.

We recognize that the principles embodied in *MacDonald* arose in the course of an interlocutory appeal rather than a petition for extraordinary relief from an adverse ruling on a defense speedy trial motion. Nevertheless, we believe those principles have equivalent viability in the context of this case. As a practical matter, there is no difference between an interlocutory appeal and a petition for extraordinary relief from a trial judge's denial of a speedy trial motion. Like 28 U.S.C. § 1291, the Uniform Code of Military Justice does not provide servicemembers accused of offenses a right of interlocutory appeal to the courts of military review. The Code limits our appellate power to act only "with respect to the findings and sentence as approved by the convening authority." Article 66(c), UCMJ, 10 U.S.C. § 866(c). Consequently, a petition for extraordinary relief is the only way an accused can obtain appellate review of the matter before trial proceedings have concluded.

Moreover, the Supreme Court granted certiorari in *MacDonald* to review the question of whether the Court of Appeals had exceeded its authority in overturning the trial judge's ruling because of "the extraordinary nature" of that case. Likewise, the question confronting us in this extraordinary writ petition concerns an alleged usurpation of power by a military judge.

We also see similarity between the policy considerations enumerated by the Supreme Court and those of concern to us in administering the military criminal justice system. A petition for extraordinary relief to overturn an adverse speedy trial ruling, like an interlocutory appeal, delays the proceedings and threatens the interests the Speedy Trial Clause is designed to protect.

Accordingly, we reject that language of *Hall v. Thwing* which holds that petitions for extraordinary relief from denials of motions to dismiss on speedy trial grounds involve the "right not to be tried" and automatically afford a petitioner grounds for issuance of an extraordinary writ. Both the statutory limitation on our jurisdiction, as well as the sound administration of the criminal justice system, preclude us from so acting. However, to the extent that the denial of a speedy trial motion constitutes a usurpation of judicial power or amounts to a recurring legal error, our granting of a petition for extraordinary relief may be warranted.

The petition is DENIED and the stay of proceedings ordered by this court is dissolved.

Senior Judge NAUGHTON and Judge HAGAN concur.