**UNITED STATES, Appellee**

v.

**Sergeant Karl H. PASCASCIO, 094–44–3335, United States Army, Appellant.**

**ACMR 9201088.**

U.S. Army Court of Military Review.

27 Aug. 1993.

For Appellant: Captain Robert L. Carey, JAGC (argued); Colonel Malcolm H. Squires, Jr., JAGC (on brief).

For Appellee: Captain John G. Giovannelli, JAGC (argued); Colonel Dayton M. Cramer, JAGC, Lieutenant Colonel Joseph A. Russelburg, JAGC, Captain Robert J. Walters, JAGC (on brief). Major Joseph C. Swetnam, JAGC.

Before GRAVELLE, JOHNSTON and GONZALES, Appellate Military Judges.

## OPINION OF THE COURT

GONZALES, Judge:

Pursuant to mixed pleas, the appellant was found guilty, by a military judge sitting as a general court-martial, of larceny and making and uttering a check without sufficient funds in violation of Articles 121 and 123a, Uniform Code of Military Justice, 10 U.S.C. §§ 921 and 923a (1988) [hereinafter UCMJ]. The appellant was sentenced to a dishonorable discharge, confinement for six years, forfeiture of all pay and allowances, a fine of $5,000.00, and reduction to Private E1. In compliance with the terms of a pretrial agreement, the convening authority suspended for 12 months confinement in excess of 56 months, but otherwise approved the sentence as adjudged.

Before this court, the appellant asserts that he was denied a speedy trial under Article 10, UCMJ, 10 U.S.C. § 810, because he spent over 90 days in pretrial confinement. *United States v. Burton*, 21 U.S.C.M.A. 112, 44 C.M.R. 166 (1971). We agree.

At 1730 hours on 26 February 1991, Ms. H reported to the German police that she had just seen the appellant, against whom she previously had filed a complaint for marriage fraud and larceny of money, in an office building in Stuttgart. An hour later, the German police apprehended appellant and took him to the Stammheim prison in Stuttgart. During his initial questioning, the appellant told the German police that he was a soldier in the United States Army. Then he stated he had been discharged and, finally, confessed that he was a deserter. The German authorities immediately notified the Army's Criminal Investigation Division (CID) office in Stuttgart that they were detaining the appellant and that he was claiming to be a deserter from the Army. They asked Special Agent Lyons to assist them in verifying the appellant's identity and provided Agent Lyons with the appellant's full name, social security number, sex, race, and date of birth (13 March

1953). The German officials indicated that they would relinquish custody of the appellant when his military status was confirmed.

Agent Lyons forwarded this information by message to the Crime Records Center (CRC) at Fort Holabird, Maryland, on 27 February 1991. The following day, the CRC notified Agent Lyons that someone with the appellant's name had been dropped from the rolls by an engineer company in Germany as a deserter on 13 January 1983. Included in the three CRC reports on the appellant were three different birth dates and an entry that he was 70 inches tall.

In the meantime, German authorities obtained sworn statements from four other German women who stated that they too had been defrauded by the appellant in various amounts of money. On 8 March 1991, German authorities again requested assistance in verifying the appellant's identity and his status as a deserter so that he could be released to the Army. They also indicated they were willing to provide the appellant's fingerprints. Agent Lyons contacted the CRC about the existence of a fingerprint record and CRC reported that it did not have such a record on the appellant. He also contacted the United States Army Enlisted Records and Evaluation Center (USAREREC) at Fort Benjamin Harrison, Indiana, and requested documents pertaining to the appellant that might be held by the United States Army Deserter Information Point (USADIP).

On 12 March 1991, Agent Lyons received three faxed documents and a small photo of the appellant from USAREREC. However, the photo was too dark to allow for any comparison with the appellant. One of the documents indicated that the appellant's birthday was 13 March, but the year was 1943. On 17 March 1991, Agent Lyons assigned the case to Special Agent Vaughn with specific instructions to contact the USAREREC for further assistance and to obtain a clear photograph of the appellant.

On 18 March 1991, Agent Vaughn met with the appellant at the Stammheim prison. The appellant indicated that he was born in California, but Agent Vaughn believed that the appellant's accent was more typical of the Caribbean area. The appellant appeared to be at least 74 inches tall and his execution of a few simple facing movements at Agents Vaughn's command were performed poorly.

The following day, the USADIP informed Agent Vaughn that the appellant's records indicated that he was born in Wilson, North Carolina. Agent Vaughn compared the appellant's recent signature on the German fingerprints card with the older signatures on the identification cards the appellant had in his possession when he was apprehended. It appeared to him that the signatures did not match. He also noted that the appellant's New York driver's license showed that he was born on 13 March 1943. In comparing the details provided by the appellant with the information from the CRC and the USADIP, Agent Vaughn was bothered by the inconsistency in the year and place of the appellant's birth and his height data. His initial impression was that the appellant was an impostor.

Agent Vaughn returned to the Stammheim prison at the request of German officials on 21 March 1991 with Mr. Haug, a local national criminal investigator in the CID office, who served as an interpreter with prison officials. The German officials were eager to confirm the appellant's identity and to relinquish custody of the appellant to the Army if he was in fact a soldier. They gave Agent Vaughn a copy of the appellant's fingerprints. During the course of their interview with the appellant, the appellant chose to speak only to Mr. Haug. He told Mr. Haug that he was born in Honduras, which was consistent with the CRC information. He also correctly identified his last unit of assignment, but gave a different name for his company commander than what the CRC records indicated.

On 26 March 1991, Agent Vaughn contacted Agent Davis at the CID office at Fort Benjamin Harrison and requested assistance in obtaining an original photograph of the appellant and a legible copy of

his personnel (201) file from the appellant's records at the USADIP. Agent Lyons reviewed Agent Vaughn's progress in this case on 29 March 1991, and told Agent Vaughn to contact the staff judge advocate for VII Corps Base for advice. Agent Vaughn contacted the staff judge advocate on 16 April 1991, who advised him that the appellant should not be taken into the Army's custody until his status as a soldier was definitely confirmed. No other activity occurred during the month of April except on 30 April 1991, when Agent Vaughn received a copy of the appellant's personnel file without any photo from Fort Benjamin Harrison.

Another meeting with the staff judge advocate occurred on 6 May 1991, when the staff judge advocate directed one of his attorneys, Captain (CPT) Lorenzo, to assist Agent Vaughn in verifying the appellant's identity and status. Agent Vaughn still believed that the appellant was not who he claimed to be because too many details he provided Agent Vaughn did not "jive" with the CRC and USADIP records. Ten days later, Agent Vaughn contacted Agent Zawodny at the CID office at Fort Benjamin Harrison to request assistance in obtaining the appellant's original personnel file and a clear photo. On 20 May 1991, Agent Zawodny informed Agent Vaughn that the appellant enlisted on 23 October 1973, and that his enlistment contract falsely indicated that he was a U.S. citizen. Agent Vaughn informed CPT Lorenzo and Agent Lyons. Agent Lyons told Agent Vaughn to close the CID case on the appellant because the false citizenship information on his enlistment contract made it "void and Pascascio now belongs to the Germans."

Nothing further occurred until 18 June 1991, when CPT Lorenzo called Agent Vaughn for a report on the current status of the appellant's case. Agent Vaughn was on leave and CPT Lorenzo spoke with Agent Barrington, who told him that the case had been closed. Captain Lorenzo met with Agents Lyons and Barrington the next day. The case was reopened to deter-

mine the appellant's identity and status. Captain Lorenzo personally contacted the USADIP and requested that the appellant's deserter packet with photo be sent to him immediately. On 20 June 1991, Agent Barrington went to the Stammheim prison with a copy of the appellant's personnel file. The appellant answered various questions posed to him by Agent Barrington which were all consistent with the information contained in his personnel file. Agent Barrington took several polaroid photos of the appellant and obtained 37 handwriting exemplars from him. The exemplars and several handwriting standards taken from the appellant's personnel file were forwarded to the crime lab for analysis.

On 2 July 1991, CPT Lorenzo received a clear photo of the appellant from the USADIP which matched the polaroid photos of the appellant. That same day Agent Barrington received the results of the handwriting analysis from the lab. It confirmed that the appellant was indeed who he said he was. Captain Lorenzo then took immediate steps to have the appellant transferred from the Stammheim prison to the Army's confinement facility at Mannheim, which was accomplished the next day, 3 July 1991.

On 2 August 1991, CID was notified by the trial counsel that charges under the UCMJ would be preferred against the appellant. The CID then initiated its own report of investigation, but their report contained nothing more than the standard seven-paragraph memorandum that discussed the sworn statements, documents, and English translations thereof that were obtained from the German police investigators. The trial counsel indicated that these statements and documents were sufficient for prosecution and that no further investigation by CID was required.

In addition to the charges of which the appellant was found guilty, he was also charged with desertion and wrongfully impersonating an official of the United States government on 16 August 1991.[1] On 21

---

1. The offenses of desertion and wrongfully impersonating a U.S. Government official were

dismissed by the military judge prior to receiving the appellant's pleas. The prosecution of

August 1991, an Article 32, UCMJ, Investigating Officer (IO) was appointed. A defense request for delay from 29 August 1991 until 16 September 1991, in order to prepare for the Article 32, UCMJ, investigation was approved by the IO. The Article 32, UCMJ, investigation was postponed from 16 September to 17 October 1991, due to the appellant's illness and hospitalization. After the Article 32, UCMJ, investigation was held and completed on 17 October 1991, the defense submitted a request for a sanity board. The sanity board was held on 12 and 13 November 1991. In the meantime, the charges were referred to trial on 5 November 1991, and the Germans waived their primary right of jurisdiction over this case the following day.[2]

The appellant was arraigned on 13 November 1991. At that time the appellant moved to dismiss the charges for denial of a speedy trial, but requested a continuance to prepare for the litigation of this motion. The military judge heard testimony on the motion on 4 December 1991, and determined that the government's accountability for speedy trial purposes began on 21 May 1991. That was the day after the day the government should have initiated action to secure the appellant's custody based on the information it had concerning the appellant's true identity and military status at the time. Of the 197 days between 21 May and 4 December 1991, the military judge attributed 87 days to four defense delay periods—19 days from 29 August through 16 September 1991, because of a defense request for delay, 30 days from 17 September through 16 October 1991, because of the appellant's illness, 26 days from 18 October through 12 November 1991, because of the appellant's sanity board request, and 21 days from 13 November through 3 December 1991, because of a

defense request for delay. He then applied the 120–day rule under the amended R.C.M. 707 to the remaining 110 days of government accountable time and denied the appellant's motion. The trial defense counsel asked the military judge whether there was a finding that the presumption under *Burton* had been rebutted. With little explanation, the military judge indicated that it had been rebutted. The appellant then requested a delay in the proceedings in order to appeal the military judge's ruling.

The appellant appealed the judge's ruling through a petition for extraordinary relief to this court, but it was denied on 31 March 1992. *Pascascio v. Fischer,* 34 M.J. 996 (A.C.M.R.1992). That opinion noted that the appellant had not met any of the criteria for the issuance of a writ of mandamus. It stated, however, that the military judge's findings and conclusions with respect to the speedy trial motion may constitute factual and/or legal errors which are more appropriately reviewed in the normal course of appellate review. The appellant's court-martial resumed on 7 April 1992, when the trial defense counsel advised the military judge of this court's decision on the appellant's petition for extraordinary relief and of a pending appeal to the United States Court of Military Appeals.[3] The appellant also requested a continuance to hire a civilian counsel, which the military judge granted in conjunction with setting trial for 5 May 1992. The trial was actually held on 4 May 1992. The United States Court of Military Appeals denied the appellant's writ-appeal petition on 19 May 1992, without prejudice to the appellant's right to raise the speedy trial issue during the regular appellate review. *Pascascio v. Fischer,* 36 M.J. 36 (C.M.A.1992). We now are in a position to conduct this review.

both charges was barred by the statute of limitations pursuant to Article 43(b) and (c), UCMJ, 10 U.S.C. § 843(b) and (c).

2. It was normal practice for the Chief Public Prosecutor for Stuttgart to withhold waiver of primary jurisdiction to the United States Army until after the Article 32, UCMJ, investigation was completed and charges were referred to trial so that he could evaluate whether German

interests would be satisfied by the prosecution of the case in a court-martial.

3. The appellant filed his writ-appeal petition for review of this court's decision on the application for extraordinary relief and brief with the United States Court of Military Appeals on 22 April 1992. *Pascascio v. Fischer,* 36 M.J. 20 (C.M.A. 1992).

■ We find no abuse of discretion in the military judge's determination that the beginning date for speedy trial purposes was 21 May 1991. *See United States v. Longhofer*, 29 M.J. 22, 28 (C.M.A.1989). The government's failure to verify the appellant's identity and status within a reasonable time after being put on notice by German officials and by the appellant that he was a deserter from the Army, was a sufficient basis for the military judge to select an appropriate date prior to 2 July 1991. He was not required to select 2 July 1991, when the appellant's identity and status were finally confirmed beyond all doubt. *See United States v. Keaton*, 18 U.S.C.M.A. 500, 40 C.M.R. 212 (1969). We take exception, however, to the judge's calculation of the number of days attributable to defense delays and, thus, the number of days that remain for which the government is accountable. We find, using the same four periods for defense delays as listed above, that the total number of days attributable to the defense should be 95 days, leaving 102 days accountable to the government.

We note that the government conceded at trial that the *Burton* 90–day rule was still valid. In conjunction with this concession, the government argued that the speedy trial clock started on 3 July 1991, when the appellant was transferred to the Army's custody. After deducting defense delays, the government contended that it was accountable for less than 60 days. The defense counsel, on the other hand, argued that the government's accountable time started on 15 March 1991, when the government had enough information available to determine that the appellant was who he said he was. He contended that the government violated both the *Burton* 90–day and the R.C.M. 707 120–day rules.

■ We agree with the government's position at trial that the *Burton* 90–day rule

is applicable to those cases where the nature of the restraint is pretrial confinement under R.C.M. 305. The Court of Military Appeals fashioned this rule based on Article 10, UCMJ, which states that when an accused "is placed in arrest or confinement prior to trial, immediate steps shall be taken to inform him of the specific wrong of which he is accused and to try him or to dismiss the charges and release him." The court held that "a presumption of an Article 10 violation will exist when pretrial confinement exceeds three months.[4] In such cases, this presumption will place a heavy burden on the government to show diligence, and in the absence of such a showing the charges should be dismissed." *Burton*, 44 C.M.R. at 172.

■ We disagree with the government's position on appeal that the *Burton* 90–day rule is no longer valid because it was superseded by the President's change to R.C.M. 707 and replaced by a new 120–day rule. We need not go further than the 1984 discussion to R.C.M. 707(d) and the 1991 analysis to the new R.C.M. 707 to reach this conclusion. Before the new R.C.M. 707 became effective on 6 July 1991, there existed two different 90–day rules, one created by *Burton* in 1971 and the other provided by R.C.M. 707(d) in 1984, which was really a 90/10–day rule.[5] This difference was recognized in the discussion to R.C.M. 707(d), where it stated that under some circumstances, the *Burton* 90–day rule could result in dismissal of charges, despite compliance with R.C.M's 90–day rule. The analysis to the new R.C.M. 707, which is intended to be a guide in interpretation, clearly states that the new R.C.M. 707 amends the former R.C.M. 707 and that the 90–day rule previously established in R.C.M. 707(d) has been eliminated. The analysis does not state that the other 90–day rule under *Burton* has been amended, eliminated, superseded, or replaced. On the contrary, it clearly ac-

---

4. The court later clarified "three months" to mean "90 days." *United States v. Driver*, 23 U.S.C.M.A. 243, 49 C.M.R. 376 (1974).

5. Under R.C.M. 707(d) the military judge may, upon a showing of extraordinary circumstances, extend the 90–day period by 10 days. Under

*Burton*, there is no 10–day extension permitted to its 90–day rule. Another difference in the two 90–day rules is that not all the periods of exclusions allowed under R.C.M. 707(c) were also deductible for purposes of *Burton*.

knowledges that unless *Burton* and its progeny are reexamined, it would be possible to have a *Burton* violation despite compliance with amended R.C.M. 707 120–day rule. If the President and the drafters intended for the new R.C.M. 707 to replace the *Burton* 90–day rule along with the R.C.M. 707(d) 90/10–day rule, they surely could have stated this in the discussion or analysis to the new rule. They did not.

This court recently discussed the *Burton* 90–day rule in the context of a post-trial rehearing in *United States v. Howard*, 35 M.J. 763 (A.C.M.R.1992), *pet. denied*, 37 M.J. 262 (C.M.A.1993). Although the outcome of the case did not depend on either the *Burton* or the R.C.M.'s 90–day rule, this court, nevertheless, acknowledged that "by judicial decision the Court of Military Appeals has created a 'ninety day rule.' Under this rule, the accused must be brought to trial within ninety days of the imposition of pretrial restraint. Failure to bring the accused to trial creates a presumption of a violation of the Article 10, UCMJ, speedy trial right." (citations omitted). *Id.* at 765. It is interesting to note that even though the speedy trial period for the rehearing began more than four months after the effective date of the amended R.C.M. 707, the government did not take the position on appeal that the *Burton* 90–day was no longer valid. Instead, it argued that the rule did not apply in this case because the number of days the government was accountable for was well under 90 days. The court agreed and ruled that the accused was not denied his right to a speedy trial under Article 10, UCMJ, or R.C.M. 707.

We are not alone in our opinion that the new R.C.M. 707 did not eliminate the *Burton* 90–day rule. The Navy–Marine Corps Court of Military Review recently held that *Burton*, as modified by *Driver*, is still operative. *United States v. Kossman*, 37 M.J. 639 (N.M.C.M.R.), *certif. for rev. filed*, Dkt. No. 93–6002/MC (C.M.A.1993). In his concurring opinion, Judge Mollison expressed a similar view to ours when he stated that because there is "the lack of an express intent to overrule the *Burton* 90–

day rule with the promulgation of the current R.C.M. 707 (R.C.M. 707 analysis), I am persuaded we remain bound by *Burton.*" *Id.* at 642. Senior Judge Freyer took the position that the presumption of an Article 10, UCMJ, violation arising from pretrial confinement in excess of 90 days is a matter of substantive law that cannot be changed by the President through an amendment to the Rules for Courts–Martial. *Id.* at 641. "[T]here is no infirmity in judicial prescription of substantive rules needed to implement the Congressional purpose of Article 10 when such specifics have not been expressly provided by the Congress." *Id.* at 641.

Congress amended the Uniform Code of Military Justice in 1982, 1984, 1986, and 1988, after being on notice of the *Burton/Driver* definition of "immediate steps" in Article 10, UCMJ, as being 90 days. If Congress had any objection or disagreement with this well-recognized rule, it could have expressed its will by amending Article 10, UCMJ, to establish a different time period. It is apparent that Congress has determined, on several occasions, that no good purpose would be served by it superseding the United States Court of Military Appeals' interpretation of "immediate steps," when the nature of the restraint is pretrial confinement. By taking no action to amend Article 10, UCMJ, Congress has given its implicit approval to the judicially fashioned 90–day rule.

We are also mindful that the Court of Military Appeals has reaffirmed the *Burton* 90–day rule since the first R.C.M. 707 established the 120–day and 90/10–day rules in 1984. In *United States v. McCallister*, 27 M.J. 138 (C.M.A.1988), the court recognized at least three different speedy trial rules when it found that the accused's court-martial "was timely under the standards of R.C.M. 707(a) [120–day rule], and (d) [90/10–day rule], and the 90–day rule set forth in *United States v. Burton.*" *Id.* at 139 (citations omitted). It also observed that, "this Court has continued to enforce the 90–day rule for accused in pretrial confinement ..." and "[w]e have complete confidence that conscientious judicial en-

forcement of *Burton*'s 90–day rule, R.C.M. 707, and the Sixth Amendment will adequately safeguard an accused's right to a speedy disposition of charges against him." *Id.* at 140, 141. The court again highlighted the fact that the *Burton* 90–day rule is alive and well in *United States v. King,* 30 M.J. 59 (C.M.A.1990). There the court noted that the same evidence of defense delays and waiver that supported the military judge's ruling with respect to R.C.M. 707(d) [90/10–day rule], also supported the judge's conclusions that the presumption of *United States v. Burton* was overcome. *Id.* at 66. In footnote 7 of the opinion, the court stated that:

> The *Burton–Driver* presumption ... has been applied in such a manner that the Government must 'show *extraordinary* reasons for not complying' with the 90–day rule, and it must show a nexus between the extraordinary circumstances and a delay beyond 90 days. In other words, the Government must show that these abnormal circumstances '*required* more than' 90 days to get the case to trial.

More recently, the court considered whether an accused was entitled to dismissal of the charges under R.C.M. 707(d) [90/10–day rule] or *Burton.* *United States v. Carpenter,* 37 M.J. 291 (C.M.A. 1993). After analyzing the facts surrounding the delays associated with two separate psychiatric examinations, the court determined that the *Burton* presumption of a violation of Article 10, UCMJ, had not been triggered; nor had R.C.M. 707(d) [90/10–day rule] been violated. The court noted in a footnote that it need not at that time determine whether R.C.M. 707 superseded *Burton.*

 Until the Court of Military Appeals overrules the precedent of the *Burton* 90–day rule, we are not free to ignore it. *See generally United States v. Jones,* 23 M.J. 301, 302 (1987). Applying *Burton* to the instant case, we find that the government failed to meet its heavy burden to show diligence in bringing the appellant to trial within 90 days. In other words, it failed to demonstrate that extraordinary circumstances required more than 90 days to bring the appellant to trial. What is glaring are two lengthy periods of an absence of diligence by the government after 20 May 1991. First, there was a 29–day gap between 21 May 1991 and 18 June 1991, when the government did absolutely nothing. Then, it took the government an unexplained 45 days to prefer charges against the appellant after he was transferred to the Mannheim confinement facility on 3 July 1991. We also find that the delayed waiver of primary jurisdiction by the German authorities was not an extraordinary or abnormal circumstance that contributed to or caused any portion of the delay. Accordingly, we hold that the appellant was denied his right to a speedy trial, as afforded him by Article 10, UCMJ, and *Burton.*

Because our disposition of this assignment of error is favorable to the appellant, it is unnecessary for us to consider the remaining errors, including those personally raised by him pursuant to *United States v. Grostefon,* 12 M.J. 431 (C.M.A.1982).

The findings of guilty and the sentence are set aside. The charges and their specifications are dismissed.

Senior Judge GRAVELLE and Judge JOHNSTON concur.